■ OLYMPIA HOUSE, INC., et al., Appellants-Respondents, v FARAMARZ ELGHANAYAN, Respondent-Appellant and Counterclaim Plaintiff-Respondent-Appellant, et al., Counterclaim Defendants. MOISE ELGHANAYAN, Counterclaim Defendant-Respondent. — Order of Supreme Court, New York County (Xavier C. Riccobono, J., upon decision of Hilda G. Schwartz, J.), entered January 18, 1984, unanimously modified, on the law, insofar as it denied plaintiffs' motion for dismissal of defendant's counterclaim for damages, those portions of the counterclaim seeking damages are dismissed, and the order is otherwise affirmed, without costs.

The case involves a dispute among members of the Elghanayan family over ownership of corporate shares in the apartment building known as Olympia House, at 279 East 44th Street in Manhattan. The building was owned by plaintiff Olympia House, Inc., all of whose shares were owned by plaintiff Olympic Estates, Inc. Prior to 1974, Davoud Elghanayan was the record owner of all interest in Olympic Estates. During that year

Davoud divested himself of his interest in Olympic Estates in a manner now disputed.

Plaintiffs contend that Davoud divided his interest in Olympic Estates, in March 1974, equally among his three daughters, plaintiffs Paritchehr Elghanayan, Shirley Elghanayan and Flora Tesei. Defendant Faramarz Elghanayan, first cousin to the individual plaintiffs, argues that the March 1974 division agreement was never implemented. Instead, he maintains that six months later there was another agreement by which Davoud gave one-third interest in Olympic Estates to each of his daughters Paritchehr and Flora, and divided the remaining one third equally between Shirley and defendant, who was then married to Shirley. Defendant produced several stock powers, dated September 27, 1984, as purported evidence of this agreement. Plaintiffs dispute that later agreement as unconsummated, the instruments never having been delivered. Defendant urges that these instruments were constructively delivered to the family's vault in Teheran.

According to defendant, his assertion of one-sixth ownership was confirmed when the family decided to convert the apartment building to cooperative status in 1979-1980. In September 1980, steps were taken to dissolve Olympic Estates. Meanwhile, all of the Olympia House shares, held by Olympic Estates, were taken over by a Netherlands Antilles company called Joshua Corporation. Defendant, who purported to own one-sixth interest in this new holding corporation, held a bearer stock certificate for all 6,000 of Joshua Corporation's shares, to facilitate his engineering of the cooperative conversion process. Defendant claims to have hired an attorney for this purpose and to have supervised the preparation of the "red herring" and "black book". In 1982 Davoud arranged for the sale of the Olympia House shares, held by Joshua Corporation, to 425-58 Corporation, which was to be the conversion sponsor. That corporation made a $100,000 down payment, and the Attorney-General approved the plan, but the deal fell through over the summer. Defendant maintains that the reason for the collapse was his marital breakup, and his wife Shirley's determination to deprive him of his interest in the property. Plaintiffs maintain that the plan had to be scrapped because of the illegal involvement of an off-shore corporation (Joshua) and litigation by tenants who asserted that the plan was deceptive.

During the late summer and fall of 1982, and as defendant's marriage with Shirley was deteriorating, family meetings were held at which challenges were raised to defendant's assertion of a one-sixth interest. A demand was also made that defendant

remove himself from the management of Olympia House and give up the stock certificate in Joshua Corporation. When defendant refused, Shirley took their child and much of their property in New York and left for London, where she commenced divorce proceedings. The following month, the instant action was commenced to enjoin defendant from any further managerial interest in this real estate, to force him to turn over the Joshua Corporation stock certificate to his wife and her sisters, and to obtain a declaratory judgment that the stock purchase agreement by Joshua Corporation was void and that the property was still owned by Olympic Estates, which was in turn owned in equal shares by the three plaintiff sisters, to the exclusion of defendant. In his answer, defendant maintained that he owned one-sixth interest in the property, and had further been promised either a salary or 10% of the profits over $3 million as compensation for his supervision of the conversion process. He asserted a counterclaim to this effect, in the form of declaratory relief, and further counterclaimed for $1,270,833.33 in compensatory damages and $10 million in punitive damages for interference with the cooperative conversion by the individual plaintiffs and other family members named as counterclaim parties defendant.

In December 1982, now retired Justice Arnold Fraiman granted plaintiffs a preliminary injunction against defendant's management of the property, directed defendant to turn over books and records to plaintiffs' attorney, and substituted one Robert Handler, employed by the family to manage other of their New York properties, as manager of this property pendente lite.

In 1983, plaintiffs and defendant each moved for partial summary judgment on their respective ownership claims. Plaintiffs also sought to make permanent Justice Fraiman's injunction against defendant's involvement in the management of the property. Defendant, on the other hand, sought to have that preliminary injunction modified to permit replacement of Handler with an independent third party to manage Olympia House.

Special Term denied both the motion and the cross motion for summary judgment, dismissed defendant's counterclaim on jurisdictional grounds with respect to counterclaim defendant Moise Elghanayan (a brother of the individual plaintiffs), and left undisturbed the preliminary injunction with regard to management of the property.

Regardless of whether Olympia House is owned by Joshua Corporation or is still owned by Olympic Estates, Inc., there are clear questions of fact as to defendant's asserted right to a one-sixth interest in the property. These issues of fact preclude

summary judgment for either party on their requests for declaratory relief with regard to the question of ownership. Plaintiffs urge that they are at least entitled to five-sixths interest in whatever corporate entity controls Olympia House, and thus should be entitled to partial summary judgment to that extent. However, if neither of the 1974 agreements upon which the parties rely is valid, a question would then be raised as to the extent of the individual plaintiffs' ownership interest in the property formerly exclusively owned by their father, a counterclaim defendant who has not as yet joined issue in this case. Denial of partial summary judgment has the effect of maintaining the status quo with regard to the property, especially in light of the fact that it is currently being managed by a court-appointed individual. It should be noted, with regard to protection of defendant's interests, that under the management of Handler the property is operating profitably, as compared with its prior performance under defendant's direction.

The order at Special Term should be modified with respect to the counterclaim for damages for "willfully, wantonly and maliciously interfer[ing] in the consummation of the plan to convert Olympia House into a cooperative" for the purpose of squeezing defendant out of the picture. This counterclaim cause of action is variously asserted by defendant as one for breach of contract or one for tortious interference with contract. It goes without saying that if the former theory is relied upon, then the counterclaim can only be asserted against those who were parties to the alleged contract. But whatever the terms of this contract were, it is clear that defendant could only have been entitled to payment for services (i.e., his 10% share of proceeds over $3 million) upon consummation of the cooperative conversion. Inasmuch as defendant's partners in this alleged contract had their own pecuniary interest in its outcome, it must be assumed that those other parties certainly had the right to disagree with the terms and manner of execution posited by defendant. This is especially true in light of the fact that defendant is counterclaiming against parties who concededly controlled a majority of the interest in this property. The fact that there were reservations about utilizing an off-shore corporation in a conversion process, that there was litigation pending or threatened by various tenants alleging deception, and that defendant's management of the property had resulted in financial reverses, were adequate reasons for the other parties to have considered aborting this alleged contract. The counterclaim defendants had their own competing interests in this property, and in the absence of a showing of unlawful restraint of trade or employment of wrongful means, the consequences of their interference with a purely

prospective contractual relationship cannot give rise to a cause of action (*see, Guard-Life Corp. v Parker Hardware Mfg. Corp.,* 50 NY2d 183, 191-194). The contract was voidable at best, and thus cannot give rise to a cause of action for tortious interference. While defendant may have had an interest in a successful consummation of the cooperative conversion, nowhere can he point to any agreement on the part of the counterclaim defendants expressing approval of his efforts to proceed with the conversion to consummation. There being no such agreement, there can be no claim for tortious interference therewith.

The counterclaim thus failing to state a cause of action for damages, we need not reach the question of jurisdiction over counterclaim defendant Moise Elghanayan. Concur — Ross, J. P., Asch, Fein and Kassal, JJ.