■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERIC FOSTER, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Douglass, J.), rendered February 9, 1989, convicting him of criminal possession of a controlled substance in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

At approximately 11:00 A.M. on April 28, 1986, Police Officer Edward Hueter and his partner Police Officer Joseph Balise, while on motor patrol in the 67th Precinct in Brooklyn, were passed on the right by a red Nissan Sentra bearing out-of-state plates which cut them off and nearly collided with the patrol vehicle. The officers switched on the siren to signal the vehicle to pull to the side of the street. The officers exited the patrol car and Officer Balise approached the driver's side of the stopped vehicle while Officer Hueter approached the passenger's side. The codefendant Patrick Williams was in the driver's seat, the defendant Eric Foster was in the front passenger's seat, and the codefendant Harry Bell was in the rear seat behind Foster. Officer Balise asked Williams for his driver's license and the vehicle's registration and insurance card. Williams was unable to produce any of these documents but the defendant produced a rental agreement from National Car Rental which had expired seven days earlier. The only authorized driver noted on the rental contract was Tawana Foster whom Williams and the defendant identified as the defendant's aunt. The defendant said he had given Williams permission to drive. Williams acknowledged that the vehicle was overdue at the car rental agency and claimed they were going to have it "reregistered". None of the occupants of the car could produce any identification.

Suspicious that the car might be stolen, Officer Balise used his portable radio to run a check on the plates and the vehicle identification number on the car. The check revealed that the car had not been reported stolen. Nevertheless, the officers decided to proceed to the precinct with the defendant and the other two men in order to determine if the car was stolen and the rental contract was valid. The officers requested that one of the occupants of the vehicle accompany them in the patrol car. The other two occupants traveled in the Nissan to the precinct. The defendant volunteered to ride in the patrol car with the officers, while Williams drove the Nissan with Bell as a passenger. Officer Balise provided Williams with directions to the precinct.

The 10 to 12 block trip to the 67th Precinct took approximately 15 to 20 minutes because the area through which they traveled was very populated and congested. Upon arrival at the precinct, the Nissan was parked opposite the front of the precinct and the patrol car which had been following pulled in behind. Officers Balise and Hueter and the defendant exited the patrol car and approached the Nissan in which Williams and Bell were still seated. Officer Balise approached the driver's side and Officer Hueter approached the passenger side of the Nissan. As Bell exited the front passenger seat, Officer Hueter observed a brown paper bag partially protruding from under the front passenger seat. A clear plastic bag containing a white substance was sticking out of the brown paper bag. Officer Hueter grabbed the bag, opened it, and discovered that it contained two plastic bags of a white substance. He showed the bag to his partner and the officers immediately placed the defendant, Williams and Bell under arrest. The suspects were taken into the station house to have the arrests processed.

A subsequent search of the Nissan by Officer Balise produced a .25 caliber gun in a brown paper bag from the back seat, 15 rounds of .25 caliber ammunition on the floor between the driver's and front passenger's seats, a bullet inside the pocket of a jacket belonging to Bell on the back seat, and a beeper from the driver's side visor. Drug paraphernalia was recovered from the trunk of the car.

The Supreme Court denied that branch of the defendant's omnibus motion which was to suppress the physical evidence, fully crediting the testimony of Officers Balise and Hueter. Following the hearing court's denial of his motion, the defendant entered a plea of guilty to the crime of criminal possession of a controlled substance in the second degree, and

thereafter sentence was imposed. For the reasons that follow, we affirm the defendant's conviction.

The initial stop of the vehicle in which the defendant was a passenger was justified because it passed the patrol car on the right in violation of the Vehicle and Traffic Law § 1120 *(see, People v Ellis,* 62 NY2d 393, 396; *People v Ingle,* 36 NY2d 413; *People v Frank,* 161 AD2d 794; *cf.,* Vehicle and Traffic Law § 1123). Thereafter, the officers were entitled to ask the driver for his license and registration *(see,* Vehicle and Traffic Law § 401 [4]; *People v Ellis, supra)* and, upon learning that the vehicle was rented, to make a reasonable inquiry to obtain information concerning ownership of the rented vehicle *(see, People v Wilson,* 161 AD2d 742; *People v Vazquez,* 135 AD2d 896). The defendant's contention that the officers fabricated the reckless passing scenario in order to justify the stop of the vehicle is without foundation. It is well settled that issues of credibility are primarily for the hearing court and on appeal its factual findings should not lightly be disturbed *(see, People v Prochilo,* 41 NY2d 759, 761; *People v Armstead,* 98 AD2d 726). The testimony of the officers was not inherently incredible as a matter of law, nor did it have the appearance of having been patently tailored to nullify constitutional objections so as to lead this court to substitute its judgment for that of the hearing court *(see, People v McCormick,* 162 AD2d 878; *cf., People v Miret-Gonzalez,* 159 AD2d 647; *People v Garafolo,* 44 AD2d 86, 88). Indeed, the record indicates that at the station house the codefendant Williams was issued traffic summonses for passing on the right and driving without a license *(see, People v Ardila,* 159 AD2d 710). Furthermore, because of Williams's inability to produce any identification, the officers could lawfully remove him to the police precinct rather than issuing him a summons on the spot *(see, People v Ellis, supra).*

The question remains whether the otherwise valid stop escalated into an arrest of the vehicle's occupants predicated upon less than probable cause by virtue of the subsequent detention and transportation of the defendant and the others to the police precinct. Assessing the reasonableness of the police conduct "requires a balancing of the interests involved in the police inquiry" *(People v De Bour,* 40 NY2d 210, 217). This entails "weighing the government's interest in the detection and apprehension of criminals against the encroachment involved with respect to an individual's right to privacy and personal security" *(People v Cantor,* 36 NY2d 106, 111).

Guided by these principles we are of the view that the short

detention of the defendant and codefendants and their transport to the precinct in order to clarify the status of the rented vehicle was not unreasonable, particularly in light of the expired rental agreement and the occupants' failure to produce any identification. The scope and intensity of the police officers' actions were reasonable in light of the developing circumstances *(see, People v De Bour, supra; People v Cantor, supra)*. Although the officers could have conducted their investigation at the scene over the radio, given the close proximity of the station house to the site of the stop, transporting the defendant and the codefendants to the station house was reasonably calculated to dispel expeditiously the officers' reasonable suspicion that the vehicle may have been stolen and, thus, was within the concept of reasonableness necessary to justify the police conduct *(see, People v Hicks,* 68 NY2d 234). There is no indication in the record that the defendant was in custody prior to his actual arrest. The police did not approach with guns drawn, did not handcuff the defendant, and did not use threats to coerce the defendant and the codefendants to accompany them to the precinct *(see, People v Hicks, supra,* at 240). The encounter was essentially devoid of intimidation. Indeed, the defendant voluntarily rode in the patrol car to the precinct while Williams was permitted to drive the Nissan with Bell as a passenger. Under the circumstances, the method of ascertaining the ownership of the vehicle was not so intrusive as to constitute an unlawful detention in violation of constitutional protections. Accordingly, the subsequent seizure of the cocaine, which was observed by Officer Hueter in plain view, was lawful *(see, People v Brosnan,* 32 NY2d 254; *People v Perez,* 135 AD2d 582). Having discovered the cocaine, the officers had probable cause to arrest the defendant and the other occupants of the vehicle. The police were further authorized to search not only the occupants of the vehicle but were also entitled to conduct an inventory search of the vehicle contemporaneous with the arrest *(see, People v Ellis, supra,* at 396-397; *People v Wilson,* 161 AD2d 742, *supra; People v Tyson,* 160 AD2d 826; *People v Perez, supra)*. Thompson, J. P., Brown, Eiber and O'Brien, JJ., concur.