The People of the State of New York, Appellant, v Jessie Alexander, Steven Howington and Robert Taylor, Respondents.

Fourth Department, March 12, 1993

## APPEARANCES OF COUNSEL

*William J. Fitzpatrick, District Attorney* of Onondaga County, Syracuse *(Gary Kelder* of counsel), for appellant.

*Gerald P. Berkery,* Syracuse, for Jessie Alexander, respondent.

*Angelo Rinaldo,* Syracuse, for Steven Howington, respondent.

*W. Patrick Mullin,* Syracuse, for Robert Taylor, respondent.

## OPINION OF THE COURT

DENMAN, P. J.

The People appeal from an order of Onondaga County Court granting defendants'* motion to suppress evidence seized by police in the course of an automobile stop and search. In suppressing the evidence, stolen video equipment and a tire iron used to assault a robbery victim, the court found that police acted properly in stopping the vehicle, detaining its three occupants, and initially questioning the driver concerning Vehicle and Traffic Law violations. Nevertheless, the court found that the police acted illegally in questioning the driver about a stolen TV/VCR and in inspecting it for a serial number. In ordering the tangible evidence suppressed, the court did not address the admissibility of the driver's incriminating statement in response to police inquiry, although defendants had sought suppression of all property and statements.

On appeal, the People contend that the court made an erroneous finding concerning the critical sequence of events, i.e., whether the arresting officers inspected the TV/VCR before or after receiving a report of the crime, acquiring information concerning the driver's illegal operation of the

---

* Although the record contains the motion to suppress of defendant Robert Taylor only, the court ordered the evidence suppressed with respect to all three defendants.

vehicle, and determining to tow the car and conduct an inventory of the contents. The People submit that the search and seizure can be sustained on various theories, including the plain view, attenuation, and independent source doctrines.

## I

The three defendants were jointly indicted in February 1992 on nine counts of robbery, burglary, assault, criminal possession of a weapon, and criminal possession of stolen property. The men were accused of breaking into an apartment at 747 West Onondaga Street in Syracuse, beating the occupant with a tire iron, and stealing her property. The crime allegedly occurred around midnight on October 23, 1991. The suspects were arrested and the stolen items recovered following a vehicle stop that occurred within a few blocks and several minutes of the crime. The stop and detention of the suspects, questioning of the driver, and subsequent seizure of the evidence were the focus of a suppression hearing at which the only witnesses were Syracuse Police Officers Gordon Quonce and John Kaufman.

According to the testimony, on the night in question Quonce and his partner, Officer Dillon, were operating a marked patrol car; Kaufman was manning a police trailer parked in the 700 block of West Onondaga Street. At 12:07 A.M., while Quonce was patrolling at West Onondaga and Tallman Streets, he saw a car in the rear parking lot of 747 West Onondaga. His attention was drawn to the vehicle because it was moving "real slow" with its lights off, and because that is a high crime area. The car continued to move slowly as it pulled out of the parking lot and, with its lights on, proceeded past the patrol car, traveling east on Tallman. Quonce followed the car for about 30 seconds and observed that it turned right onto Rich Street without signaling. Quonce followed the car around the corner and signaled it to stop.

The officers approached the vehicle and asked the driver, defendant Robert Taylor, a black male, for identification. Taylor was unable to produce a license, registration, or insurance card. The officers noted that there were two other occupants, defendants Steven Howington and Jessie Alexander, both black males. Using their flashlights, the officers observed a large white combination TV/VCR on the back seat. Quonce asked Taylor to whom it belonged. Taylor said that he had just bought it for $50 from a guy named "Jerry" at 747

West Onondaga. After asking the two passengers to identify themselves, Quonce returned to his patrol car to check, via radio, whether there were any outstanding warrants against the men, whether Taylor was a licensed driver, and whether the car was registered. Quonce testified that he had not yet inspected the TV/VCR for its serial number.

Meanwhile, at 12:09 A.M., a citizen appeared at the police trailer and reported to Officer Kaufman that there was an assault victim at 735 West Onondaga, across the street. Kaufman went to the aid of the injured woman, who stated that, between midnight and 12:05, someone claiming to be "Mike" had knocked on the door of her apartment at 747 West Onondaga. She opened the door, believing that it was the building manager. A black male entered her apartment, struck her several times in the head with a tire iron, then stole her TV. The victim reported that she had heard the voices of two other males during the incident.

Kaufman ran to the victim's apartment, saw that her bed was soaked with blood and spoke with another resident of the building, Frank Davis. Davis provided Kaufman with information concerning the victim's missing television, which he described as an "odd-looking" large white TV/VCR combination. Between 12:15 and 12:20, Kaufman returned to the police trailer and put out a radio report concerning the crime. He reported that the suspects included one black male and two other males, and that among the stolen property was a large white TV/VCR.

At the scene of the stop, Quonce was in the patrol car, awaiting a response to his warrant-license-registration check, when he heard Kaufman's crime report. Subsequently, Quonce learned from the radio dispatcher that Taylor was an unlicensed driver, that the vehicle was not registered or insured, and that the vehicle had illegal plates. At that point, the officers determined to charge Taylor for failure to signal and unlicensed operation of an unregistered, uninsured vehicle with illegal plates. They also determined, in accordance with departmental policy, to tow the vehicle. After informing Taylor of that determination, the officers began to conduct an inventory of the contents of the car so that it could be towed. At that point Quonce inspected the TV/VCR and obtained the serial number. Quonce ran a radio check on the serial number but received a negative response, probably because it had been stolen only minutes before. Additionally, in response to the

report of the burglary/robbery, Quonce radioed Kaufman to inform him about the TV/VCR in the suspects' vehicle.

Kaufman proceeded to the location of the stop and, at 1:05 A.M., arranged for Davis to be transported there for the purpose of identifying the property. Davis positively identified the TV/VCR as the victim's. The three men were arrested at 1:10 A.M. Later that morning, they were charged with felonies, and Taylor was ticketed for the Vehicle and Traffic Law violations. After the car was impounded, the inventory search was concluded. Also seized from the car and inventoried were a small TV, an antenna, a remote control device, and a video tape, some of which Davis also identified as belonging to the victim, and a tire iron that was believed to be the assault weapon.

## II

In the first part of its decision, the court made express findings of fact in accordance with the foregoing. The court found that the officers' check of the TV/VCR serial number took place after the officers acquired grounds to impound the vehicle and after they learned of the burglary/robbery at 747 West Onondaga Street. Later in its decision, however, the court made the contradictory finding that the inspection of the TV/VCR to ascertain its serial number preceded both (a) the report that a TV/VCR had been stolen in the robbery; and (b) the officers' determination to impound the vehicle based on the information concerning illegal operation of the vehicle. In ordering the tangible evidence suppressed, the court reached the following conclusions of law: the stop of the vehicle was valid because of the officers' observation that it had failed to signal for a turn; the suspects were detained properly based on questions of ownership and authorized operation of the vehicle that arose during the initial questioning of the driver; impounding the car was justified based on its unlicensed operation; nevertheless, the police were without authority to question the driver concerning ownership of the TV/VCR, and illegally obtained its serial number in the absence of probable cause and a warrant. The court granted the motion to suppress "all the property seized from the vehicle".

## III

The People challenge the court's suppression decision as both legally and factually erroneous. We conclude that the

court erred in finding that the officers "searched" the TV/ VCR in order to obtain its serial number before they confirmed the unauthorized operation of the vehicle, before they determined to impound the vehicle and inventory its contents, and before they learned about the recent theft of a TV/VCR matching that description. Those findings contradict the factual sequence set forth earlier in the suppression court's decision. Additionally, the court's findings are at variance with the testimony of the arresting officer. Quonce testified that he returned to his vehicle to run warrant, license and registration checks; that he heard the report of the robbery; that he learned that the vehicle was unregistered and its driver unlicensed; that he determined to impound the car and inventory its contents because of the Vehicle and Traffic Law violations; and that he then examined the TV/VCR to obtain its serial number. On cross-examination, Quonce testified unequivocally that he did not remove the TV/VCR from the car to check its serial number before returning to his vehicle to run the checks. Quonce was impeached with prior inconsistent statements relating a different sequence, but those prior statements were not admitted into evidence and Quonce was not asked which version was accurate. Thus, on this record, the only competent evidence is that Quonce obtained the serial number after obtaining the incriminating information and after deciding to impound the car.

Given the sequence of events established by the evidence, we conclude that only Taylor's incriminating statement, not the tangible evidence, should be suppressed. The investigatory stop of the vehicle was lawful because of the driver's failure to signal a turn in violation of Vehicle and Traffic Law § 1163 (*People v Ellis,* 62 NY2d 393, 396; *People v Ingle,* 36 NY2d 413, 414). The officers' initial approach and inquiry to seek the driver's identity and to request his license, registration and insurance card were permissible and reasonable in furtherance of that traffic stop (*People v Ellis, supra; People v Foster,* 173 AD2d 841, 843). The driver's inability to produce a license or ownership document authorized the officers to detain the car and driver for further investigation (*see,* Vehicle and Traffic Law § 507 [2]; § 509 [1]; *cf.,* Penal Law § 10.00 [1], [2]; CPL 140.10 [1] [a]; Vehicle and Traffic Law § 155; *People v Ellis, supra; People v Watson,* 177 AD2d 676, *lv denied* 79 NY2d 954; *People v Foster, supra,* at 843-844; *People v Abrams,* 119 AD2d 682, 683). Thus, the officers' actions to that point constituted a valid exercise of their authority to stop for a

traffic infraction and to detain the car and driver briefly to run a routine license and registration check.

Seeing the TV/VCR in plain view (see, *People v Cruz,* 34 NY2d 362, 370; *People v Brosnan,* 32 NY2d 254, 260) on the rear seat of the car, Quonce asked Taylor if the set was his. Taylor's response was that he had just purchased it for $50 at 747 West Onondaga Street. Taylor's statement must be suppressed on Fourth Amendment grounds. Under the four-tier test of *People v De Bour* (40 NY2d 210), police may question an individual concerning his identity, travel origin, and destination, provided they have an articulable basis—an objective, credible reason not necessarily indicative of criminality (*People v Hollman,* 79 NY2d 181, 190-191; *People v De Bour, supra,* at 219). Absent "founded suspicion" of criminal activity, however, police may not proceed to the next level of confrontation, the "common-law inquiry", which involves "invasive questioning" focusing on the "possible criminality" of the subject (*People v Hollman, supra,* at 191, 192). Here, the officer violated that standard. Because he lacked any indicia of criminality with respect to the TV/VCR, the officer was not privileged to make accusatory inquiries concerning its ownership (*People v Hollman, supra,* at 191-192, 194; *cf., People v Guzman,* 153 AD2d 320, 322, *appeal dismissed* 76 NY2d 824). Thus, Taylor's incriminating response to the inquiry must be suppressed. Whether the tangible evidence also must be suppressed depends on whether the illegal questioning necessarily tainted all that followed.

We conclude that the subsequent seizure of the tangible evidence was attenuated from the illegal inquiry and based on probable cause independently developed. After hearing the statement, Quonce returned to the patrol car to run warrant, license and registration checks. In doing so, he did not rely on Taylor's statement about the TV/VCR, as that statement had no significance at that time. While awaiting results of the checks, Quonce heard Kaufman's report that a robbery had occurred at 747 West Onondaga, that three men, including at least one black male, had been involved, and that a distinctive large white TV/VCR had been stolen. That report was independent of the illegal questioning and, coupled with Quonce's prior observations, including his initial sighting of the car at that address, provided probable cause to believe that the occupants of the vehicle were the assailants and that the TV/VCR observed in the car was the victim's property. The officers were thus authorized to seize the TV/VCR and obtain

its serial number *(People v Foster, supra,* at 844). The level of suspicion was further elevated when, before the remaining contents of the car were seized, the victim's neighbor identified the TV/VCR. Contrary to the suppression court's observation, no warrant is required to search an automobile seized contemporaneously with an arrest on probable cause *(Chambers v Maroney,* 399 US 42).

## IV

Accordingly, the order of the suppression court should be reversed, Taylor's statement concerning the TV/VCR should be suppressed, and the tangible evidence should not be suppressed.

PINE, LAWTON, FALLON and DAVIS, JJ., concur.

Order unanimously reversed, on the law and facts, motion granted in part, and matter remitted to Onondaga County Court for further proceedings on the indictment in accordance with the opinion by DENMAN, P. J.