OPINION OF THE COURT
Bernard S. Greenbaum, J.
The defendant, Arthur Williams, is charged with criminal impersonation of a public servant, two counts of criminal possession of stolen property in the fifth degree, and disobeying a steady red light, in violation of Penal Law § 190.25 (3) and § 165.40, and Vehicle and Traffic Law § 1111 (d) (1).
The defendant moved to suppress statements and physical evidence, to wit: the defendant’s affirmative response to the officer’s inquiry as to whether defendant was a Taxi and Limousine Commission Official; the defendant’s negative response to the officer’s inquiry as to whether the defendant possessed a Taxi and Limousine Commission (T.L.C.) identification card; the Taxi and Limousine Commission shield; shield holder; and operator card. A Huntley/Mapp hearing was held before me on August 5, 1993. The People presented one witness, Police Officer Darryl Valinchus. The defense did not present any witnesses.
I find the testimony of Police Officer Darryl Valinchus to be credible, and I find the facts to be as follows:
On February 23, 1993, at 7:17 a.m., Officer Valinchus observed the defendant driving his vehicle westbound on Hoyt Avenue. He observed the defendant pass a steady red light at Crescent Street. The officer pulled the vehicle over to the corner of 23rd Street and Hoyt Avenue. The officer approached the driver’s side and asked the defendant to produce his driver’s license, registration and insurance card. The defendant was unable to produce a driver’s license. While Officer Valinchus was standing at the driver’s side window, he observed that the registration sticker and inspection sticker on the windshield were invalid. As he was looking at the stickers in the windshield, he observed a Taxi and Limousine Commission shield on a small shield holder in the front windshield. Upon seeing the T.L.C. shield, the officer asked the *935 defendant if he was a T.L.C. officer and if he had an identification card. The defendant replied, yes, he was a T.L.C. officer, but he did not have an identification card. At this time, Officer Valinchus brought the defendant into the station house for further investigation. Officer Valinchus contacted T.L.C. Supervisory Inspector McClarity and ascertained that the defendant was not an officer or employee of the T.L.C. The defendant had told Officer Valinchus that his name was Arthur Williams.
The defense contends that the defendant’s statements and the T.L.C. inspector’s shield, shield holder, shield case, shield pin, name plate, and operator’s card must be suppressed on the ground that the officer inquired into matters beyond the scope of the traffic stop. Defense relies upon People v Woods (189 AD2d 838 [2d Dept 1993]) and People v Alexander (189 AD2d 189 [4th Dept 1993]) in setting forth his contention. The defendant’s contention is not meritorious in this case.
In Woods (supra), the officer questioned and searched the suspect solely because the defendant’s car matched a "very general description of a vehicle seen several days previously in the area where robberies had occurred”. (People v Woods, at 842.) The Court held that the stop of the defendant was invalid in that the description was insufficient to give the officer reasonable suspicion to believe that the occupants of the car were involved in criminal activity.
In People v Alexander (supra), the officer executed a lawful traffic stop. During the course of the officer’s inquiry he observed a TV/VCR in plain view in the vehicle and asked the driver questions about the TV/VCR. The Court suppressed the driver’s responses on the ground that the questions went beyond the scope permissible for a traffic stop. The Court held that the observation of a TV/VCR in the car lacked any indicia of criminality.
However, the facts in the instant case are distinguishable from the facts in both People v Woods and People v Alexander (supra). The stop of defendant in People v Woods was invalid. The questioning of the defendant in People v Alexander was excessive. In the instant case the defendant was lawfully stopped pursuant to a traffic infraction and the questioning of the defendant was not excessive because the questions were asked to ascertain the identity of the defendant.
In People v De Bour (40 NY2d 210), the Court of Appeals set forth the now well-known standards to be followed in evaluat *936 ing the lawfulness of police activity involving street encounters with civilians. The minimal intrusion of approaching to request information is permissible when there is some objective credible reason for the interference, not necessarily indicative of criminality. The next degree, the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information but short of a forcible seizure. Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person (see, CPL 140.50 [1]). A frisk is permissible if the officer has reasonable suspicion that the detainee is armed (see, CPL 140.50 [3]). Finally, a police officer may arrest and take into custody a person when he has probable cause to believe that person has committed a crime, or an offense in his presence (CPL 140.10; People v De Bour, supra, at 223). In this case, Officer Valinchus acted in accordance with the standards set forth above. Therefore, the statements and physical evidence seized are admissible.
Officer Valinchus observed the defendant’s vehicle pass a red light. Officer Valinchus was justified in stopping the defendant for a traffic infraction. After the stop, Officer Valinchus had a right and duty to request driver’s license, registration and insurance card. (See, Vehicle and Traffic Law § 507 [2]; People v Ellis, 62 NY2d 393 [1984].) The defendant was unable to produce a driver’s license. A driver’s inability to produce a license authorizes an officer to detain the car and driver for further investigation. (See, People v Alexander, supra.) Similarly, the officer had a right to observe the registration and inspection information in the window. The officer noted the inspection and registration stickers were expired. In plain view, the officer observed a T.L.C. inspector’s shield in the windshield. This gave Officer Valinchus an articulable basis to question the driver about his identity. The observation of the shield along with the lack of driver’s license and expired registration and inspection stickers gave rise to a founded suspicion that criminal activity was afoot. Officer Valinchus had a common-law right to inquire further as to the driver’s identity.
Therefore, the officer was entitled to ask the defendant for explanatory information. When the defendant could not pro *937 vide an adequate explanation for possessing the shield without proper accompanying identification, the officer had reasonable suspicion to believe that the defendant had committed or was committing a crime. Thus, the arrest of the defendant was authorized at that time.
Further, any person who displays an official shield has a reduced expectation of privacy. A person who displays an official shield may be asked to produce additional identification by anyone, including police officers. When the defendant was unable to produce the identification sought, the officer was authorized to make further inquiry. The defense contention that an inquiry about the shield was not related to the traffic stop is unfounded. In this and every traffic stop an officer may inquire for identification. (People v Ellis, supra.) Officer Valinchus’ observation of the shield and questions about the shield were as a direct result of the defendant being unable to produce appropriate identification. Again a driver’s inability to produce a license authorizes an officer to detain the car and driver for further investigation. (People v Alexander, supra.) Therefore, the questions about the shield were directly related to the traffic stop inquiry.
Alternatively, the shield and accompanying physical evidence are admissible pursuant to the plain view doctrine. Officer Valinchus made a lawful stop of the defendant’s vehicle. The discovery of the shield was inadvertent in that Officer Valinchus was not looking for a suspect who had stolen a shield. Officer Valinchus could not help but notice the shield when he checked the defendant’s registration and inspection stickers. The shield was incriminating in nature given the fact that this defendant could not produce a valid driver’s license or identification card and that his vehicle had expired registration and inspection stickers. Therefore, the evidence is admissible pursuant to the plain view doctrine.
For all of the above reasons, the physical evidence and statements are all admissible. Defendant’s motions to suppress same are denied.