■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM A. VALERIO, Appellant. [710 NYS2d 497] —Judgment affirmed. Memorandum: On appeal from a judgment convicting him of criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]), defendant challenges an order denying his motion to suppress 17.57 pounds of cocaine seized by State Police in a search of a car in which defendant had

been a passenger. At the outset, the encounter between the police and defendant and his companion was a request for information, which requires only an "articulable basis," meaning an "objective, credible reason not necessarily indicative of criminality" (*People v Ocasio,* 85 NY2d 982, 985; *see, People v Hollman,* 79 NY2d 181, 184, 190). The police had an objective, credible reason for approaching the car (and the suspects once they appeared on the scene) inasmuch as the car was illegally parked. Thus, the officers were permitted to ask the suspects their names, addresses, points of origin and destination, and the purpose of their trip (*see, People v Hollman, supra,* at 190-191). The encounter almost immediately escalated beyond a mere request for information as a result of a license plate check revealing that the car was unregistered and the suspects' evasiveness and improbable and contradictory statements, all of which gave the police at least a "founded suspicion" of criminality (*People v Battaglia,* 86 NY2d 755, 756). The fact that the car was unregistered and illegally parked authorized the officers to impound it (*see, South Dakota v Opperman,* 428 US 364, 368-369; *People v Sullivan,* 29 NY2d 69, 71-72). Contrary to defendant's contention, the suspects were not detained, but voluntarily accompanied the police to the station, which was only several hundred feet away, where the suspects were given the opportunity to make arrangements to complete their trip. Although defendant challenges the inventory search of the car, the record establishes that the cocaine was discovered not during the inventory search, but during a subsequent search conducted pursuant to defendant's voluntary oral and written consent (*see, People v Gonzalez,* 39 NY2d 122, 128-129; *People v Caldwell,* 221 AD2d 972, 973, *lv denied* 87 NY2d 920; *People v Brinson,* 201 AD2d 945, 946, *lv denied* 83 NY2d 849), which the officers were entitled to elicit (*see, People v Battaglia, supra,* at 756; *People v Hollman, supra,* at 191-192).

All concur except Green, J. P., who dissents and votes to reverse in the following Memorandum.

Green, J. P. (dissenting). I respectfully dissent. "In evaluating police conduct, the court must determine whether the action taken was justified in its inception and at every subsequent stage of the encounter (*People v De Bour,* 40 NY2d 210, 215)" (*People v Nicodemus,* 247 AD2d 833, 835, *lv denied* 92 NY2d 858). In my view, while the police action was justified in its inception, it was unlawful at each subsequent stage of the encounter. I agree with the majority that the police had an objective, credible reason for approaching the illegally parked vehicle and requesting information from defendant and his

companion (*see, People v Ocasio,* 85 NY2d 982, 985; *People v Hollman,* 79 NY2d 181, 184; *People v Alexander,* 189 AD2d 189, 194). In response to the request for information, defendant's companion produced a valid driver's license and proof of insurance and defendant produced a valid learner's permit. Both men explained to the officers that they were returning to Buffalo from New York City, and defendant added that he had bought clothing in New York City. Defendant also informed the officer that he had borrowed the vehicle from his employer, the registered owner. Before requesting information from defendant and his companion, the officers learned, through a license plate check, that the registration on the vehicle had expired two or three days earlier. Their further inquiry, however, did not concern the expired registration or the parking violation, but instead focused upon the clothing defendant acquired in New York City. At that point, the encounter crossed the line from an approach and request for information to a common-law inquiry that must be supported by a founded suspicion that criminal activity was afoot (*see, People v Hollman, supra,* at 191; *People v Cirrincione,* 206 AD2d 833, *lv denied* 84 NY2d 823). There was, however, no founded suspicion of criminal activity justifying the questioning concerning the clothing (*see, People v Cirrincione, supra; People v Alexander, supra,* at 195) or the requests that defendant produce receipts for the clothing and permit the officer to look at the clothing, which was being transported in the trunk (*see, People v Berberena,* 264 AD2d 670, *lv denied* 94 NY2d 901). That questioning and those requests had no relationship to the expired registration or parking violation that justified the initial encounter (*see, People v Cirrincione, supra; People v Guzman,* 153 AD2d 320, 322, *appeal dismissed* 76 NY2d 824). Indeed, the events that transpired following that initial encounter "reveal that the traffic infraction was utilized as a mere pretext to interrogate the defendant for unrelated crimes and to search [the] vehicle" (*People v David,* 223 AD2d 551, 553). Thus, the suspicious responses of defendant to the officer's questioning and his inability to produce receipts for the clothing cannot serve as the lawful predicate for the officer's subsequent actions (*see, People v Cirrincione, supra*).

Following the unlawful police inquiry, the officers impounded the vehicle and conducted an inventory search. The officers conducting the search testified that the decision to impound the vehicle and conduct that search was based upon their discovery of clothing they suspected to be stolen in the trunk. Thus, the search was admittedly conducted in order to uncover incriminating evidence rather than to further the lawful objec-

tives justifying an inventory search (*see, People v Acevedo-Sanchez,* 212 AD2d 1023, *lv denied* 85 NY2d 935; *cf., People v Watson,* 213 AD2d 996, 997, *lv denied* 86 NY2d 804). In any event, even disregarding the officers' actual motivations and assuming that the officers were entitled to impound the vehicle and conduct an inventory search (*see, People v Sullivan,* 29 NY2d 69, 77), I conclude that the People did not meet their burden of establishing that the search was conducted in accordance with standardized procedure (*see, People v Acevedo-Sanchez, supra; People v Colon,* 202 AD2d 708, *lv denied* 84 NY2d 824; *People v Lloyd,* 167 AD2d 856).

The inventory search uncovered no contraband, but revealed a missing fuse box and missing fuses and fragrance-soaked sheets under the passenger seat and in the trunk. Those discoveries led the officers to believe that the vehicle was being used to transport drugs, and they obtained defendant's consent to search the vehicle further. During that search, the rear seat was removed and a quantity of cocaine was discovered in an area between the rear seat and the trunk. Contrary to the majority, I do not believe that the People met their heavy burden of proving that defendant's consent to that search was voluntary (*see, People v Barreras,* 253 AD2d 369, 373-374; *People v Guzman, supra,* at 323-324). Defendant's consent was the product of improper police inquiry (*see, People v Hollman, supra,* at 194; *Matter of Antoine W.,* 79 NY2d 888, 890) followed by an unlawful inventory search. "[U]nder no rational view of the evidence at the suppression hearing can it be concluded that [defendant's] consent was acquired by means sufficiently distinguishable from the taint" of that illegality (*People v Banks,* 85 NY2d 558, 563, *cert denied* 516 US 868). Therefore, I would reverse the judgment of conviction, grant the motion to suppress the evidence seized by the police and dismiss the indictment. (Appeal from Judgment of Seneca County Court, Bender, J.—Criminal Possession Controlled Substance, 1st Degree.) Present—Green, J. P., Hayes, Hurlbutt and Kehoe, JJ.