■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

JAY LETTS, Appellant.—Crew III, J. Appeal from a judgment of the County Court of Clinton County (Lewis, J.), rendered March 11, 1991, convicting defendant upon his plea of guilty of the crime of criminal possession of marihuana in the second degree.

In July 1987, State Police Investigator Stephen Pendergast received the first of eight telephone calls from an anonymous informant disclosing that a person named "Jay", who lived on Hamilton Street in the City of Plattsburgh, Clinton County, with a woman named Kitty and who worked at SUNY-Plattsburgh, supplied marihuana to Randall Poland at $1,200 to $1,500 per pound. Investigator Michael Bingle was able to corroborate that defendant lived on Hamilton Street with his wife, Kitty, and worked in the print shop at SUNY-Plattsburgh. Additionally, as a result of subpoenaed telephone logs, the police determined that a number of telephone calls took place between the residences of defendant and Poland, although the identity of the callers was undetermined.

In February 1988, Pendergast received the last of the eight calls in which he was advised that during the weekend of February 26 to 28, 1988 defendant would be making a one-day trip in his automobile to pick up 10 pounds of marihuana for Poland. The informant was uncertain as to when defendant would leave and where defendant would go to get the marihuana. During that weekend, surveillance teams were established to watch defendant and his residence. Sometime between Saturday at midnight and Sunday at 7:00 A.M., when the morning surveillance commenced, defendant's car was discovered missing. After an unfruitful search for the car within Plattsburgh, surveillance teams were dispatched to the Northway to look for defendant's car.

The car was observed heading north on the Northway and defendant was subsequently followed by at least five unmarked police vehicles. Defendant turned off the Northway at exit 35 followed by the police vehicles. At the end of the exit ramp, the police observed that defendant did not come to a complete stop at the stop sign. The police radioed Investigator Alfred Bousquet, who was in charge of the investigation, advising of that event and that he was going to stop defendant's car. Bousquet directed that no one stop defendant, however, because he wanted to ascertain where he was heading. The police continued to follow defendant along Bear Swamp Road. When defendant turned left onto U.S. Route 9 heading toward Plattsburgh, Bousquet directed the police to

stop defendant. A subsequent search of his car revealed eight pounds of marihuana for which defendant was indicted.

Defendant moved to suppress the evidence found in his car on the ground that it was the result of an illegal stop. Following a hearing that was ordered by this court *(see,* 156 AD2d 868), County Court denied the motion, defendant pleaded guilty to criminal possession of marihuana in the second degree and was sentenced to a term of imprisonment of 1⅓ to 4 years. This appeal ensued.

The first issue to be resolved is whether the police had reasonable suspicion to stop defendant's car *(see, People v Sobotker,* 43 NY2d 559, 563), because absent such suspicion, the stop would constitute an impermissible seizure negating all that followed *(see, People v Rivers,* 129 AD2d 983, 984). While an anonymous telephone tip describing criminal activity may generate a belief that such activity is afoot, it will not constitute reasonable suspicion warranting a stop of the subject of the tip *(see, People v Stewart,* 41 NY2d 65, 69). In order for such information to give rise to a reasonable suspicion, independent investigative police work must corroborate criminal facts disclosed by the informant *(see, People v Elwell,* 50 NY2d 231, 237). However, where, as here, the independent investigative police work reveals facts which are wholly susceptible of an innocent interpretation, there remains insufficient information to establish the requisite reasonable suspicion *(see, supra,* at 238; *People v Howard,* 50 NY2d 583, 590, *cert denied* 449 US 1023). Based on the information provided by the anonymous caller, the police established that defendant and his wife resided on Hamilton Street in Plattsburgh and that defendant indeed worked at SUNY-Plattsburgh. Additionally, they confirmed that telephone calls had taken place between defendant's residence and that of Poland. None of those facts would lead a reasonable person to believe that criminal activity was afoot. Additionally, the mere fact that defendant was observed operating his vehicle on a public highway on the weekend described by the informant is not indicative of criminal activity *(see, People v Clark,* 133 AD2d 955). Accordingly, we find that the police lacked reasonable suspicion to stop defendant's car.

The remaining issue is whether defendant's car was properly stopped for a violation of the Vehicle and Traffic Law, thereby permitting analysis of whether the search that followed was within acceptable constitutional parameters. While this issue was raised by the parties before County Court and fully developed at the suppression hearing, County Court

made no ruling with regard thereto. However, since the issue has been briefed by the parties on this appeal, we will consider it in the interest of judicial economy.

It is clear that police officers are authorized to stop a motor vehicle where they have observed the commission of a traffic offense in their presence (see, Penal Law § 10.00 [1]; CPL 1.20 [39]; 140.10 [1] [a]; Vehicle and Traffic Law § 155), so long as they are not using the traffic violation as a "mere pretext" to investigate defendant on an unrelated matter (see, People v Camarre, 171 AD2d 1002, lv denied 78 NY2d 953; People v Llopis, 125 AD2d 416, 417; cf., People v Sora, 176 AD2d 1172). In the case at bar, it is clear that the traffic violation stop was wholly pretextual. When defendant was observed committing the infraction, the officers advised Bousquet that they were going to stop him. They were ordered not to do so, because Bousquet wanted to determine whether defendant would turn south on Route 9 toward Poland's residence and, if he did, Bousquet intended to follow him to that residence in the hope of observing the anticipated drug transaction. It was not until defendant turned north on Route 9, some 6 miles from the alleged traffic infraction, that Bousquet ordered the Troopers to stop his car. According to Bousquet's testimony, he ordered the car stopped so that he could continue his investigation by verifying that defendant was the operator and then interviewing him in connection therewith. It is clear, therefore, that the reason for the stop was to investigate defendant on a matter wholly unrelated to the traffic infraction. Accordingly, the judgment must be reversed and the motion to suppress granted.

Mikoll, J. P., Yesawich Jr., Levine and Casey, JJ., concur. Ordered that the judgment is reversed, on the law and the facts, motion to suppress granted and matter remitted to the County Court of Clinton County for further proceedings not inconsistent with this court's decision.