■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PORTER F. BANKS, Appellant. [609 NYS2d 420] —Cardona, P. J. Appeal from a judgment of the County Court of Albany County (Doyle, J.), rendered November 30, 1992, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the first degree.

On September 14, 1991 at approximately 1:00 P.M., State Trooper Carlos Cuprill, while sitting in his marked patrol car located in the median of the Thruway at mile marker 134 in the Town of Bethlehem, Albany County, observed a rented blue Chevrolet Corsica traveling northbound. Using radar, Cuprill confirmed the car's speed at 54 miles per hour. He observed that the driver, codefendant Robert K. Jones, was not wearing his seatbelt. Cuprill then pulled out into traffic and stopped the vehicle approximately two miles from the point of initial observation. Upon stopping the vehicle, Cuprill observed defendant sit up in the front passenger seat where he had apparently been sleeping or resting. Cuprill noticed that defendant was not wearing a seatbelt.

Cuprill requested that Jones exit and step to the rear of the vehicle. Jones complied. Cuprill then asked Jones for a driver's license and registration. Jones produced a rental agreement for the vehicle which indicated that it had been rented by Porter Banks. Jones also produced a non-photo New York driver's license under the name Thomas Cooper. Cuprill informed Jones that he stopped him because he was not wearing his seatbelt. Cuprill then asked Jones where he was coming from and where he was going. According to Cuprill, Jones replied that "he was coming from the New York City area en route to the Buffalo area, and that he had just dropped off his niece, who was going to college in New York City, that it was a day trip and he had just come down that morning". Cuprill asked Jones to have a seat in the vehicle and Jones complied.

Cuprill approached the passenger side of the vehicle and asked defendant to exit the vehicle. Defendant went back to the rear of the vehicle. There he produced a New York photo driver's license in the name of Porter Banks. Cuprill began to

question defendant. Cuprill asked defendant where he was coming from and where he was going. Defendant stated "I'm with him". Cuprill asked, "the driver?" and defendant answered "yes". Cuprill asked, "Are you coming from New York or New Jersey?" Defendant answered "yes". Cuprill observed that defendant was six feet, one inch tall, over 300 pounds, appeared nervous and agitated, and continually stared at his sidearm. Cuprill again asked defendant where he was coming from and where he was going. Defendant indicated that he was coming from the New York/New Jersey area and that he had spent a couple of days in New York City with Jones. Cuprill asked defendant if he had any luggage. Cuprill then asked defendant to have a seat in the vehicle and defendant complied.

Cuprill went back to his patrol car and ran a suspension and revocation check on Jones and defendant and a license plate check on the vehicle. The results came back negative as to each. Cuprill started to write out summonses for failure to wear seatbelts but then called for back-up, indicating a need for a possible vehicle search. Trooper Darren Donnelly responded to the scene. Upon his arrival Donnelly joined Cuprill, who informed him about the conversations he had with Jones and defendant. Cuprill called Jones to the patrol car, gave him the citations and then asked Jones "if he had anything in the car that he wasn't supposed to have, guns, weapons or drugs". Jones indicated that he did not and that Cuprill could go ahead and look. Cuprill then filled out a State Police consent to search form and gave it to Jones, who signed it. Cuprill then requested defendant to exit the vehicle. Both individuals were patted down for weapons. A search of the vehicle revealed a quantity of cocaine under the driver's seat.

Defendant was arrested and subsequently indicted for criminal possession of a controlled substance in the first degree. Following a suppression hearing, County Court denied defendant's motion to suppress the cocaine. Following a jury trial, defendant was convicted of the charged crime and was sentenced to an indeterminate prison term of 15 years to life. Defendant appeals.

We first address the issue of defendant's standing to suppress the cocaine seized from the car. The People raise the standing issue for the first time on this appeal. Although it is arguable that they are now precluded from raising it with respect to defendant's 4th Amendment challenge (see, Steagald v United States, 451 US 204, 208-209), they are not

precluded from doing so with respect to that branch of defendant's motion which challenges the search and seizure under State constitutional law. CPL 710.60 codifies our State constitutional law requirement that a person demonstrate a personal expectation of privacy in the searched premises *(see, People v Wesley,* 73 NY2d 351, 357-359). The statute places on a defendant seeking suppression the initial burden to allege facts sufficient to warrant suppression *(supra,* at 358-359). Because that burden includes a showing of standing *(supra),* the People are not precluded from raising the issue for the first time on appeal *(see, People v Jones,* 182 AD2d 1066; *People v Sanchez-Reyes,* 172 AD2d 1034, *lv denied* 78 NY2d 926). In any event, the circumstances of this case establish that defendant had a personal legitimate expectation of privacy in the area underneath the seats because the rental agreement gave him a possessory interest in the vehicle *(cf., Rakas v Illinois,* 439 US 128, 140, 148-149; *People v Wesley, supra,* at 357).*

Defendant's first challenge to the validity of the seizure is that the stop itself was pretextual and therefore invalid *(see, People v Melendez,* 195 AD2d 856; *People v Smith,* 181 AD2d 802; *People v Letts,* 180 AD2d 931, *appeal dismissed* 81 NY2d 833; *People v Mikel,* 152 AD2d 603). We disagree. Cuprill's credited testimony *(see, People v Prochilo,* 41 NY2d 759, 761) that he observed the commission of the traffic offense of failure to wear a seatbelt (Vehicle and Traffic Law § 1229-c [3]) authorized him to stop defendant's vehicle *(see, People v Letts, supra,* at 943; *see also, People v Robinson,* 74 NY2d 773, *cert denied* 493 US 966; *People v Carter,* 199 AD2d 817; *People v Sora,* 176 AD2d 1172, 1172-1173, *lv denied* 79 NY2d 864). There is no evidence demonstrating that either Jones or defendant was under investigation by the State Police prior to the stop *(see, supra).* The stop was effected contemporaneously with the commission of the traffic offense. Furthermore, Cuprill's initial inquiry of the driver was directed, appropriately, to a request for a driver's license and vehicle registration, and finally, summonses were issued for the subject traffic offense. In short, this record lacks a clear demonstration that the reason for the stop was to investigate Jones or defendant on a

---

* This case presents no issue of automatic standing to challenge the search of the vehicle inasmuch as defendant was not charged with criminal possession of a controlled substance under a statutory presumption *(see,* Penal Law § 220.25 [1]; *People v Drakes,* 175 AD2d 841; *see also, People v Wesley, supra).*

matter wholly unrelated to the traffic infraction *(see, People v Letts, supra,* at 934).

Although the stop of the vehicle for a violation of the Vehicle and Traffic Law was lawful, the search itself, as the People acknowledge, cannot be justified solely on this basis *(see, People v Class,* 63 NY2d 491, 496, *revd on other grounds* 475 US 106; *People v Sora, supra; People v Mercado,* 165 AD2d 910, *lv denied* 76 NY2d 988). The People contend that the search was justified by the voluntary consent obtained from Jones. Defendant contends, however, that the consent was the product of an impermissible police detention and inquiry and therefore was invalid *(see, People v Hollman,* 79 NY2d 181).

The seatbelt violations provided Cuprill with an articulable reason to detain the vehicle's occupants to check the driver's license and vehicle registration and to request information from each occupant concerning his identification, destination *(see, People v Hollman, supra,* at 191) and origin *(see, People v Carter, supra,* at 819). Contrary to defendant's claim, we consider Cuprill's question about luggage to be a legitimate part of the request for information commensurate with the evolving circumstances of this encounter. We find that the detention of the vehicle's occupants and the police inquiry about possible contraband items in the vehicle were justified by a founded suspicion that criminal activity was afoot *(see, People v Hollman, supra; People v Irizarry,* 79 NY2d 890, 892). We come to this conclusion based upon all of the attendant circumstances, including defendant's nervousness, his initial fragmented responses, his preoccupation with Cuprill's side-arm and the contradictory versions in reference to the particulars of the trip given by the occupants *(see, People v Carter, supra,* at 819).

Additionally, we find that Jones' offer to the Troopers to "go ahead and look" and the absence of an objection from the one passenger possessed with the presumptive authority to object *(cf., People v Carter, supra)* justified their good-faith reliance upon the driver's authority to consent to a search of the vehicle *(see, People v Adams,* 53 NY2d 1, 9, *cert denied* 454 US 854; *see also, People v Carter, supra).* Accordingly, we find that County Court properly denied defendant's suppression motion.

White and Weiss, JJ., concur.

Mercure, J. (dissenting). We dissent. Even accepting the majority's finding that the initial stop of the vehicle was lawful *(see, People v Ellis,* 62 NY2d 393, 396), it is our view

that Trooper Carlos Cuprill's subsequent conduct of requiring the occupants to separately exit the vehicle and submit to questioning about matters wholly unrelated to the vehicular violation exceeded acceptable constitutional bounds. It is fundamental that when a police officer is acting in a law enforcement capacity, his right to ask questions hinges on the manner and intensity of the interference, the gravity of the offense and the circumstances attending the encounter (see, People v Hollman, 79 NY2d 181, 189; People v De Bour, 40 NY2d 210, 219). The stop of a vehicle for a minor traffic infraction of itself arouses very little, if any, suspicion of criminality and justifies a correspondingly limited intrusion. There is no justification in such a case for questioning about any matters unrelated to the vehicular violation itself (see, People v Woods, 189 AD2d 838, 842; People v Guzman, 153 AD2d 320, 322, appeal dismissed 76 NY2d 824, cert denied 500 US 941). Surely, a seatbelt violation, at or very near the bottom of New York's penal hierarchy, committed in the presence of a police officer requires little investigation in order to develop an overwhelming case against the offender. Aside from the information to be garnered from the subject's license, registration and insurance card (see, Vehicle and Traffic Law § 401 [4]) and a subsequent routine license and registration check, we are at a loss as to any relevant area of inquiry (see, People v Alexander, 189 AD2d 189, 194-195).

In any event, Cuprill's questions as to defendant and codefendant Robert K. Jones' point of origin and destination and whether they had luggage in the trunk had no bearing upon the offense and were, accordingly, impermissible.* Of even greater significance, in the absence of a founded suspicion of criminality, Cuprill had absolutely no justification for asking whether there were "any guns, weapons or drugs in the car" (see, People v Hollman, supra, at 191-192; People v Alexander, supra, at 195; People v Woods, supra, at 842; People v Guzman, supra, at 322), the question that allegedly resulted in the consent to search. To the contrary, after defendant and Jones

---

* We are not at all persuaded by the majority's reliance upon People v Hollman (supra) and People v Carter (199 AD2d 817) as authorizing inquiry of a traveling motorist stopped for a minor traffic infraction concerning his point of origin and destination. People v Hollman (supra) involved a street encounter in which an individual was approached for "an articulable reason" (supra, at 191), a situation very different than that present here. In People v Carter (supra), the defendant did not raise and this Court did not consider the issue.

produced operator's licenses and the auto rental papers and the computer check came back negative, Cuprill should have issued tickets for violations of Vehicle and Traffic Law § 1229-c and sent defendant and codefendant on their way *(see, People v Guzman, supra,* at 323).

Because the consent to search was the product of impermissible police conduct, the evidence derived therefrom should have been suppressed *(see, People v Woods, supra,* at 843; *People v Guzman, supra,* at 324). Accordingly, we would reverse the judgment of conviction, grant defendant's motion to suppress and dismiss the indictment.

Casey, J., concurs. Ordered that the judgment is affirmed.