663 A.2d 728

COMMONWEALTH of Pennsylvania, Appellant,

v.

Andrew HENDERSON, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Robert KENNEDY, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Andre LONDON, Appellee.

Superior Court of Pennsylvania.

Argued May 10, 1995.

Filed Aug. 10, 1995.

Stuart B. Suss, Assistant District Attorney, West Chester, for Commonwealth, appellant.

Jenny Steinen, Assistant Public Defender, West Chester, for appellees.

Before ROWLEY, President Judge, and WIEAND, McEWEN, CIRILLO, DEL SOLE, KELLY, POPOVICH, FORD ELLIOTT, and SAYLOR, JJ.

KELLY, Judge:

In this appeal we must determine whether the police may stop motor vehicles solely because their drivers and/or front-seat passengers over the age of four are not using seat belts.

After careful consideration, we hold that the police lack the authority to stop motor vehicles under such circumstances. Thus, we affirm the suppression court's February 1, 1994 order which suppressed all evidence accumulated against appellees, Andrew Henderson, Robert Kennedy, and Andre London, pursuant to East Fallowfield Township Police Chief Peter John Mango's stop of the Ford LTD occupied by appellees.

The relevant facts and procedural history of this case are as follows. At approximately 9:22 p.m. on February 8, 1993, Chief Mango's patrol car was parked off to the side of West Chester Road. Chief Mango's patrol car was parked perpendicular to the roadway and its headlights were activated. The brown, four-door Ford LTD sedan occupied by appellees then drove through Chief Mango's illuminated field of vision in an eastbound direction. At this point, Chief Mango noticed that the driver of the Ford LTD was not using his seat belt. Immediately, Chief Mango entered the eastbound lane of West Chester Road and proceeded to follow the Ford LTD. After approximately one-quarter mile of pursuit, Chief Mango noticed that the front-seat passenger of the Ford LTD was also not using his seat belt and Chief Mango stopped the vehicle.

When Chief Mango walked near the Ford LTD, he asked its driver, appellee-Kennedy, for his license, registration, and insurance card. Appellee–Kennedy told Chief Mango that he had no license or other identification with him. During this conversation, Chief Mango detected a strong odor of burning marijuana emanating from the Ford LTD. Consequently, Chief Mango asked the Ford LTD's occupants who was smoking the marijuana. Appellee–Kennedy responded by telling Chief Mango that everyone inside the Ford LTD was smoking marijuana. At this point, Chief Mango arrested all of the occupants of the Ford LTD and requested the assistance of two other police officers.

When the additional police officers arrived to assist Chief Mango, all three appellees were searched at the site of their arrest. A pager and eight hundred, seventy-two dollars were found on appellee-Kennedy's person. The search of appellee-Henderson's person revealed a pager, seventy-one dollars and

six .357 magnum rounds of ammunition inside a plastic bag. A pager, six hundred, fifty-two dollars and two plastic bags containing marijuana were found on appellee-London's person. Finally, before leaving the site of appellees' arrest, a search of the Ford LTD was conducted. This search revealed the butt of a marijuana cigarette, a package of cigarette rolling papers, a plastic bag containing cocaine residue, and another plastic bag containing marijuana.

Appellees were then transported to the police station where it was discovered that appellee-Kennedy had an outstanding bench warrant for violating his parole or probation, and appellee-London had outstanding summary traffic warrants. Additionally, more extensive searches of appellees' persons were conducted at the police station. During these searches, thirty-one foil wrapped bags of cocaine were found inside appellee-Henderson's underwear.

All three appellees were charged with possession of a controlled substance,[1] possession with intent to deliver a controlled substance,[2] possession of a small amount of marijuana,[3] and criminal conspiracy.[4] None of appellees were charged with violating any of the provisions of the Motor Vehicle Code.[5] More specifically, none of appellees were charged with violating any of the provisions of the seat belt laws contained within the Motor Vehicle Code.[6]

Appellee–Henderson and appellee-London each filed pre-trial suppression motions. A suppression hearing on these motions was held on September 14, 1993, at which time the suppression court orally granted them. Subsequently, by order dated October 13, 1993, the suppression court vacated its September 14, 1993 suppression order and then held another suppression hearing in this matter on October 14,

1. 35 P.S. § 780–113(a)(16).
2. 35 P.S. § 780–113(a)(30).
3. 35 P.S. § 780–113(a)(31).
4. 18 Pa.C.S.A. § 903(a)(1).
5. 75 Pa.C.S.A. § 101 *et seq.*
6. 75 Pa.C.S.A. §§ 4581–4586.

1993. At this second suppression hearing, the suppression court permitted appellee-Kennedy to join appellee-Henderson's suppression motion. Also, Chief Mango testified regarding the events that transpired on the evening of February 8, 1993 in order to establish a complete record for appeal.

By order dated February 1, 1994, the suppression court suppressed all statements and physical evidence associated with this case. In the opinion that the suppression court filed with this order, the Honorable Thomas G. Gavin opined that "the legislative intent in enacting 75 Pa.C.S.A. § 4581 was not to provide the police with an additional probable cause ground to make vehicular stops." Suppression Court Opinion at 3. Thus, the suppression court concluded that Chief Mango's stop of the Ford LTD was illegal. *Id.* at 5. Consequently, on February 16, 1994, the Commonwealth filed its notice of appeal. On March 2, 1994, the suppression court filed three opinions inviting this Court to examine its February 1, 1994 opinion for the reasoning behind its suppression order.

The Commonwealth raises the following issue for our review:

1. MAY A POLICE OFFICER WHO OBSERVES A SEAT BELT VIOLATION IN A PASSING VEHICLE STOP THAT VEHICLE TO WARN THE DRIVER AND OCCUPANTS OF THE VISIBLE SAFETY VIOLATION?

Commonwealth's Brief at 3.

Preliminarily, we note that this Court's standard of review in this case is as follows:

When reviewing the Commonwealth's appeal from an adverse decision of the suppression court, we must consider "only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted." *Commonwealth v. Smith,* 396 Pa.Super. 6, 8, 577 A.2d 1387, 1388 (1990). When the evidence supports the trial court's findings of fact, we may reverse only when the legal conclusions drawn from these facts are erroneous. *Id.*

*Commonwealth v. Quiles,* 422 Pa.Super. 153, 156, 619 A.2d 291, 292 (1993) (*en banc*).

With this standard of review in mind, we will address the Commonwealth's challenges to the suppression court's February 1, 1994 suppression order. The Commonwealth contends that a police officer may stop a motor vehicle whenever the officer observes any of its front-seat occupants failing to use their seat belts. Specifically, the Commonwealth avers that the General Assembly intended to vest the police with the authority to stop a motor vehicle in order to issue oral hazard warnings if its front-seat occupants are not using seat belts. According to the Commonwealth, the authority of the police to stop motor vehicles whose front-seat occupants are not using seat belts in order to issue oral hazard warnings is derived from the police's power under 75 Pa.C.S.A. § 6308(b) to enforce violations of the provisions of the Motor Vehicle Code. Finally, the Commonwealth contends that evidence gathered by a police officer when that officer stops a motor vehicle whose occupants are not using seat belts may be admissible in any criminal proceedings against the occupants.

A police officer is authorized to stop a motor vehicle to check the driver's license, the vehicle's registration, the vehicle's identification number, the vehicle's engine number, and proof of financial responsibility whenever that officer possesses articulable and reasonable grounds to suspect that the Motor Vehicle Code is being violated. 75 Pa.C.S.A. § 6308(b). *See Commonwealth v. McElroy,* 428 Pa.Super. 69, 630 A.2d 35 (1993) (*en banc*) (police officer's opinion that motor vehicle was traveling forty-five miles per hour over posted speed limit constitutes articulable and reasonable grounds to stop motor vehicle). Although a motor vehicle's driver and its front-seat passengers over the age of four are required to fasten their seat belts and the driver of a motor vehicle is responsible for securing the seat belts of front-seat passengers between the ages of four and eighteen, a conviction resulting from the failure of a person over the age of four to fasten his or her seat belt will "occur only as a secondary action when a driver of a motor vehicle has been convicted of any other provision of

[the Motor Vehicle Code]." 75 Pa.C.S.A. § 4581(a)(2).[7] More-over, a motor vehicle driver or front-seat passenger over the age of eighteen cannot be convicted of a seat belt infraction and be sentenced to pay the ten dollar fine associated with such a conviction unless the driver is also convicted of simulta-neously violating another Motor Vehicle Code provision. 75 Pa.C.S.A. § 4581(b).[8] Thus, the seat belt laws mandate the

7. This subsection fully states:

(2) Except for children under four years of age and except as provid-ed in paragraph (1), each driver and front seat occupant of a passenger car, Class I truck, Class II truck or motor home operated in this Commonwealth shall wear a properly adjusted and fastened safety seat belt system. A conviction under this paragraph by State or local law enforcement agencies shall occur only as a secondary action when a driver of a motor vehicle has been convicted of any other provision of this title. The driver of a passenger automobile shall secure or cause to be secured in a properly adjusted and fastened safety seat belt system any occupant in the front seat who is four years of age or older and less than 18 years of age. This paragraph shall not apply to:

(i) A driver or front seat occupant of any vehicle manufactured before July 1, 1966.

(ii) A driver or front seat occupant who possesses a written verifi-cation from a physician that he is unable to wear a safety seat belt system for physical or medical reasons, or from a psychiatrist or other specialist qualified to make an informed judgment that he is unable to wear a safety seat belt system for psychological reasons.

(iii) A rural letter carrier while operating any motor vehicle during the performance of his duties as a United States postal service rural letter carrier only between the first and last delivery points.

(iv) A driver who makes frequent stops and is traveling less than 15 miles per hour for the purpose of delivering goods or services while in the performance of his duties and only between the first and last delivery points.

A violation of this paragraph shall not be subject to the assessment of any points under section 1535 (relating to schedule of convictions and points).

75 Pa.C.S.A. § 4581(a)(2).

8. This subsection fully states:

(b) Offense.—Anyone who fails to comply with the provisions of subsection (a)(1) shall be guilty of a summary offense with a maxi-mum fine of $25. The court imposing and collecting any such fines shall transfer the fines thus collected to the State Treasurer for deposit in the Child Passenger Restraint Fund, pursuant to section 4582 (relating to Child Passenger Restraint Fund). Anyone who violates subsection (a)(2) commits a summary offense and shall, upon conviction, be sentenced to pay a fine of $10. No persons shall be convicted of a violation of subsection (a)(2) unless the person is also

use of seat belts by all front-seat occupants of motor vehicles, yet expressly prohibit anyone's punishment for the non-use of seat belts unless a violation of another of the Motor Vehicle Code's provisions first occurs or if the front-seat passenger is less than four years old. Consequently, because a driver of a motor vehicle or its front-seat passenger as explained above can only be punished for the non-use of a seat belt as a secondary action after another Motor Vehicle Code violation first occurs, it is unclear and ambiguous whether a person's non-compliance with 75 Pa.C.S.A. § 4581(a)(2) actually is a violation of the Motor Vehicle Code when no other provisions of the Motor Vehicle Code are simultaneously violated. Accordingly, we must now consult the rules of statutory construction to interpret the seat belt laws in relation to 75 Pa.C.S.A. § 6308(b) as these laws are not entirely free from ambiguity in this regard. *Commonwealth v. Dickerson*, 533 Pa. 294, 300, 621 A.2d 990, 993 (1993); *Commonwealth v. Berryman*, 437 Pa.Super. 258, 266, 649 A.2d 961, 965 (1994) (*en banc*); *Commonwealth v. Grayson*, 379 Pa.Super. 55, 549 A.2d 593 (1988); 1 Pa.C.S.A. § 1901.

Under the rules of statutory construction, it is this Court's duty to determine and give effect to the General Assembly's intention when we construe its properly enacted statutes. *Commonwealth v. Berryman, supra*, at 258, 649 A.2d 961 (citing *Commonwealth v. Runion*, 427 Pa.Super. 217, 628 A.2d 904 (1993); *Commonwealth v. Lundberg*, 422 Pa.Super. 495, 619 A.2d 1066 (1993); *Commonwealth v. Grayson, supra*, at 55, 549 A.2d 593; 1 Pa.C.S.A. § 1921(a)). Some of the factors that we may consider to determine the General Assembly's intent in enacting a statute are:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

convicted of another violation of this title which occurred at the same time. No costs as described in 42 Pa.C.S.A. § 1725.1 (relating to costs) shall be imposed for summary conviction of subsection (a)(2). Conviction under this subsection shall not constitute a moving violation.

75 Pa.C.S.A. § 4581(b).

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921(c). *See also Commonwealth v. Brown,* [423 Pa.Super. 264, 620 A.2d 1213 (1993) ]; *Commonwealth v. Davis,* 421 Pa.Super. 454, 618 A.2d 426 (1992)[,] *allocatur denied,* 535 Pa. 630, 631 A.2d 1004 (1993); *Commonwealth v. Barone,* 276 Pa.Super. 282, 419 A.2d 457 (1980) (*en banc* ).

*Commonwealth v. Berryman, supra* at 268–69, 649 A.2d at 966. Furthermore, comments made by legislators during the process of enacting a particular statute can be considered during the examination of the contemporaneous legislative history. *Id.* at 269, 649 A.2d at 966 (citing *Commonwealth v. Wilson,* 529 Pa. 268, 602 A.2d 1290 (1992), *cert. denied, Aultman v. Pennsylvania,* 504 U.S. 977, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992)).

▇▇▇▇ Without disregarding the intent of the General Assembly, penal statutes, *i.e.,* statutes which define criminal offenses and specify their corresponding fines and punishments, must be strictly construed. *Id.* (citations omitted). *See Commonwealth v. Wood,* 432 Pa.Super. 183, 208, 637 A.2d 1335, 1348 (1994) (citations omitted) (statute imposing penal sanctions must be strictly construed); 1 Pa.C.S.A. § 1928(b)(1). Obviously, because the provisions of the Motor Vehicle Code governing the use of seat belts impose fines, they are penal in nature and must be strictly construed within the context of the General Assembly's intent in enacting them. Accordingly, we must now analyze the intent of the General Assembly in enacting the laws regulating the use of seat belts as they relate to 75 Pa.C.S.A. § 6803(b) in this strict construction context.

By provisionally requiring all front-seat occupants of motor vehicles to be restrained in their seat in some manner, the

General Assembly evidenced the necessity of reducing the risk of harm to motor vehicle travelers, not the need to expand the power of the police to conduct motor vehicle stops. Prior to 1987, only motor vehicle passengers under the age of four were required to be restrained in their seat; motor vehicle drivers and front-seat passengers over the age of four were not subject to any laws requiring the use of seat belts. Act of 1983, November 1, P.L. 195 No. 53, § 1.[9] But, when the seat belt laws were amended in 1987 to provisionally require all motor vehicle drivers and front-seat passengers over the age of four to use seat belts, the General Assembly clearly set forth its intent in doing so as follows:

"Section 8. It is the policy of this Commonwealth that enactment of the mandatory safety seat belt system usage provision contained in 75 Pa.C.S.A. § 4581 (relating to restraint system) is intended to be compatible with support for Federal safety standards requiring automatic crash protection and shall not be used in any manner to rescind Federal automatic crash protection system requirements...."

"Section 9. The department shall initiate an educational program to begin immediately, to alert the public to the provisions of this act and the requirements and penalties specified in this act. *The program shall also encourage the use of safety seat belt systems as a means of reducing the risk of harm to their users as well as to others. The department shall submit to the General Assembly a report*

9. Currently, 75 Pa.C.S.A. § 4581(a)(1) mandates the use of child passenger restraint systems by motor vehicle passengers under the age of four. This subsection fully states:

Any person who is operating a passenger car, Class I truck, Class II truck, classic motor vehicle, antique motor vehicle or motor home and who transports a child under four years of age anywhere in the motor vehicle, including the cargo area, shall fasten such child securely in a child passenger restraint system, as defined in subsection (d). This subsection shall apply to all persons while they are operators of motor vehicles where a seating position is available which is equipped with a seat safety belt or other means to secure the systems or where the seating position was originally equipped with seat safety belts.

75 Pa.C.S.A. § 4581(a)(1).

*on the effects of 75 Pa.C.S. § 4581(a)(2) (relating to restraint systems) by August 31, 1989.*["]

Act of 1987, November 23, P.L. 399, No. 82 (emphasis added). These sections demonstrate the objective to be attained and the mischief to be remedied by the General Assembly when it amended 75 Pa.C.S.A. § 4581 in 1987. Its objective was to increase motor vehicle safety by penalizing the non-use of seat belts in certain limited situations; the mischief to be remedied was the risk of injury created by the non-use of seat belts in Pennsylvania. The enforcement of other criminal offenses and motor vehicle violations by the creation of another means by which a police officer could stop a motor vehicle was not contemplated by the General Assembly when it amended the seat belt laws in 1987.

In making the use of seat belts provisionally mandatory, the General Assembly expressly stated that it intended to enact laws which were in accord with Federal safety standards regarding automatic crash protection. More importantly, the General Assembly ordered the initiation of a program to encourage the use of seat belts by educating the public to the fact that using seat belts reduces the risk of harm to their users and others. Because the General Assembly ensured the allocation of the funds necessary to promote the use of seat belts by all occupants of motor vehicles and not just those occupants under the age of four, it is evident that it placed great importance on achieving this goal. According to the *Pennsylvania Seatbelt Law Evaluation Report, infra,* a report prepared by the Pennsylvania Department of Transportation in response to Section 9 of the Act of November 23, 1987, P.L. 399, No. 82, many different methods were developed to encourage Pennsylvanians to voluntarily fasten their seat belts when traveling in motor vehicles.[10] Yet, no statute or regulation specifically authorizes the police to stop motor vehicles

10. In fact, even prior to the 1987 amendments to the seat belt laws, programs existed to encourage the voluntary use of seat belts throughout Pennsylvania. For example, in 1983 and 1984, a "corporate seat belt initiative" was started. Center for Highway Safety, Pennsylvania Department of Transportation, *Pennsylvania Seatbelt Law Evaluation Report,* Attachment A at 3 (1990). By providing corporations with statistics regarding the expenses suffered by companies as a result of

employees being injured in automobile accidents, these initiatives effectively encouraged corporations to add "the importance of existing seat belt usage to their existing safety programs and policies." *Id.* Resultantly, the first county seat belt programs grew out of the success of the "corporate seat belt initiatives." *Id.* Let's Lifebelt Lancaster, a program which used "educational materials, special events and the involvement of county businesses and the media ... to convince the public to buckle up voluntarily[,]" began on October 1, 1984. *Id.* at 3–4. Because of the success of the Let's Lifebelt Lancaster program, similar programs spread to other counties throughout Pennsylvania in 1985 and 1986. *Id.* at 4. By working with newspaper reporters, the county programs were able to include seat belt use information in articles about automobile accidents. *Id.* Moreover, in 1985, the Keystone Safety Belt Network, a grassroots organization formed to lobby for a seat belt use law in Pennsylvania, was formed. *Id.* at 5.

After the enactment of the 1987 amendments to the seat belt laws, more programs to encourage the voluntary use of seat belts continued to develop. The first comprehensive highway safety program, The North Central Highway Safety Network, was established in 1989. *Id.* at 6. The coordinators of this network, an expanded version of the original county seat belt programs, devoted half of their activities towards the promotion of seat belt and child safety seat use. *Id.* In explaining the operations of the Network, the report states:

> By using a community immersion plan involving schools, community organizations, health care facilities, law enforcement agencies, and industry, the comprehensive projects are able to promote traffic safety issues in a highly visible manner. The project goals are achieved through a public awareness campaign and implementation of developed educational programs.

*Id.* at 6–7. Additionally, joint highway safety initiatives conducted by the Department of Transportation and the Pennsylvania State Police developed. *Id.* at 7. For example, during Child Passenger Safety Week, state troopers recorded the license plate number of cars spotted using child safety seats and submitted them for commendation letters which were mailed to the vehicle's owner. *Id.*

Thus, the methods developed to encourage the voluntary use of seat belts in Pennsylvania are best summarized as follows:

> Through the use of public information materials, posters, pamphlets, videos/films, · coloring books, luggage tags, stickers etc., highway safety messages have been dispersed to the public. These public information materials cover child safety seats, seat belts, drinking and driving, bicycle, motorcycle and pedestrian safety, safe driver characteristics, and vehicle safety programs. Available to all Pennsylvania citizens at no charge, these public information and education resources are widely utilized. In addition, curricula have been developed and used in the Commonwealth's schools to promote safety messages. The Pennsylvania Department of Education has approved these curricula for use in the schools and has actively cooperated in dissemination of the materials.

*Id.* at 8. Additionally, newsletters were initiated to further inform the public regarding the necessity of using seat belts. *Id.* at 9. Motor vehicle stops by police officers, however, were not mentioned anywhere

whose passengers' seat belts are unfastened to inform them of reduced risks of harm associated with the use of seat belts.[11] Therefore, increasing motor vehicle safety was never intended to concurrently increase routine motor vehicle stops made by the police.

Significantly, prior to January 1, 1985, the Motor Vehicle Code explicitly permitted a police officer to issue an oral hazard warning solely for the purpose of inducing compliance with the seat belt laws if that officer observed a child under the age of four not properly restrained in a child passenger restraint system. 75 Pa.C.S.A. § 4584.[12] Under the seat belt laws, a conviction can occur solely because an unrestrained child under the age of four is a passenger in a motor vehicle; a maximum fine of twenty-five dollars may be imposed on the vehicle's operator. 75 Pa.C.S.A. § 4581(a)(1). In other words, a motor vehicle operator's failure to secure a child under the age of four in a child passenger restraint system, in and of itself, is clearly a violation of the Motor Vehicle Code. *See* 75 Pa.C.S.A. §§ 4581(a)(1), (b), 4584. As such, a police officer can stop a motor vehicle if that officer observes an unrestrained child under the age of four in that vehicle. 75 Pa.C.S.A. § 6308(b).

in the report as a means of encouraging the use of seat belts in Pennsylvania. *See id.*

11. Section 10 of the Act of November 23, 1987, P.L. 399, No. 82, provides as follows:

"Section 10. For a period of 120 days after enactment, oral hazard warnings shall be given by the Pennsylvania State Police or local enforcement officers to motor vehicle drivers and front seat passengers who are not wearing safety seat belts as required by 75 Pa.C.S. § 4581 (relating to restraint systems), but no citation shall be issued for such violation during said 120–day period."

Even if Section 10 could have been interpreted to permit a police officer to stop a motor vehicle whose driver or front-seat passenger over the age of four failed to use a seat belt without the simultaneous occurrence of another Motor Vehicle Code violation, such stops would have only been permitted for a limited period of time (one hundred, twenty days) that has long since expired.

12. After January 1, 1985, the imposition of a fine not to exceed twenty-five dollars replaced the issuance of oral hazard warnings in these circumstances. 75 Pa.C.S.A. §§ 4581(a)(1), (b), 4584.

■ But, drivers of motor vehicles and front-seat passengers over the age of eighteen cannot be convicted for their failure to use a seat belt unless another simultaneous conviction for a violation of another provision of the Motor Vehicle Code first occurs. 75 Pa.C.S.A. § 4581(a)(2), (b). Therefore, a violation of the Motor Vehicle Code does not occur simply because a motor vehicle driver or front-seat passenger over the age of four fails to use a seat belt; another simultaneous violation of the Motor Vehicle Code must first occur. *See* 75 Pa.C.S.A. § 4581(a)(2), (b). Hence, failure to comply with 75 Pa.C.S.A. § 4581(a)(2), in and of itself, was never intended to be a violation of the Motor Vehicle Code for which a motor vehicle could be stopped by a police officer pursuant to 75 Pa.C.S.A. § 6308(b). Additionally, nowhere in the Motor Vehicle Code is there a provision similar to 75 Pa.C.S.A. § 4584 which would permit a police officer to issue an oral hazard warning simply because a person over the age of four is observed with his or her seat belt unfastened. Accordingly, under Pennsylvania law, a police officer possesses no authority to stop a motor vehicle solely because its occupants are not in compliance with 75 Pa.C.S.A. § 4581(a)(2).

Not surprisingly, the inability of the police to enforce 75 Pa.C.S.A. § 4581(a)(2) was explicitly recognized during the debate on the floor of the House of Representatives prior to its enactment. Specifically, Representative Piccola stated as follows:

This amendment mandates nothing, Mr. Speaker; it mandates nothing. If you drive your vehicle in the Commonwealth of Pennsylvania and obey the laws of the Commonwealth of Pennsylvania while doing so, you are not required to do a thing with regard to your seatbelt. And if you are a passenger in a vehicle, even though this law says that you are supposed to wear your seatbelt, you cannot be charged with not wearing your seatbelt in the event you are caught doing so. *There is absolutely no recourse for any law enforcement agency against the passenger in the vehicle where he is not wearing a seatbelt.* Now, if that is a

mandatory seatbelt law, then I think we do not know what we are talking about.

I think what we are doing here, Mr. Speaker, rather than passing a meaningful statute or even passing a meaningful policy which would tell the people of Pennsylvania what our intentions are and that seatbelts do save lives, we are merely cluttering up our statute books with a law that, in my view, *is unenforceable; in my view, will seldom be enforced; and if it is ever enforced, it will be enforced unfairly.*

Statements of Representative Piccola, 1987 Pa. Legislative Journal—House at 1636 (emphasis added). Representative Heckler further emphasized the police's inability to enforce 75 Pa.C.S.A. § 4581(a)(2) when he said:

This bill says to the citizens of this Commonwealth, you must wear seatbelts because they will save your life, and that is something with which I agree, and I do not believe I have heard one person speak this afternoon who has not agreed with the proposition. However, this amendment goes on to say, but *if you do not wear a seatbelt and the police officer sees you, he cannot do anything about it unless you violate another motor vehicle law as well. . . .*

Statements of Representative Heckler, *id.* at 1641 (emphasis added). In light of the statements of Representatives Piccola and Heckler, it is apparent that the General Assembly knew of the problems associated with enforcing 75 Pa.C.S.A. § 4581(a)(2) prior to its enactment. Thus, even the contemporaneous legislative history of the 1987 amendments to the seat belt laws demonstrate that a motor vehicle cannot be stopped by a police officer if its driver or front-seat passenger over the age of four does not use a seat belt unless another provision of the Motor Vehicle Code is simultaneously violated.

Finally, and perhaps most importantly, the consequences of interpreting the Motor Vehicle Code to allow police officers to stop motor vehicles solely because the seat belts of their drivers and front-seat passengers over the age of four are unfastened are undesirable. Hundreds of thousands of motor vehicles could be stopped at random each day in this Common-

wealth if the Motor Vehicle Code were interpreted to authorize police stops of all motor vehicles whose front-seat occupants were not using their seat belts.[13] The potential for abuse under such an interpretation is unquestionable. For example, police officers would be able to stop motor vehicles under the pretext of a seat belt infraction. Hence, in the words of Representative Piccola, an "unfair" enforcement of the seat belt laws would result. Clearly, the General Assembly did not intend this type of situation to spawn from its efforts to encourage the increased use of seat belts via its 1987 amendments to the seat belt laws of the Motor Vehicle Code. Therefore, when the enactment of the seat belt laws are viewed in this context, it is indisputable that the General Assembly never intended these laws to expand the frequency of motor vehicle stops by the police.[14]

■ Additionally, another rule of statutory construction supports this interpretation of the seat belt laws. Where the general provisions of one statute conflict with the specific provisions of another statute, the two statutes must be construed to give effect to both unless the conflict is irreconcilable, in which case specific provisions govern general provisions as long as the general provisions were not enacted after the specific provisions and the General Assembly did not

13. In Pennsylvania, there are over nine million, two hundred, fifty-five thousand registered motor vehicles. Bureau of Motor Vehicles, Pennsylvania Department of Transportation, *Report of Registrations* 1 (1994). Additionally, as of 1993, Pennsylvania had over eight million, fifty-eight thousand licensed drivers. Pennsylvania Department of Transportation, *Pennsylvania Crash Facts and Statistics* 3 (1993). But, during the fall of 1994, only seventy-one percent of Pennsylvania's licensed drivers were observed using seat belts. Pennsylvania Department of Transportation, *Seat Belt Observational Survey* (1994).

14. Hypothetically, based upon the statistics presented in footnote 13, *supra*, on a given day where only five million of Pennsylvania's licensed drivers are driving motor vehicles on its roadways, the police would be able to stop roughly one million, four hundred, fifty thousand of them if the Motor Vehicle Code's seat belt laws were interpreted to allow the police to stop a motor vehicle simply because a seat belt violation is observed. We conclude that such an interpretation would lead to an absurd result which we are to presume the General Assembly does not intend. *See Commonwealth v. Berryman, supra* at 268, 649 A.2d at 966 (citations omitted).

clearly indicate that the general provisions be given priority over the specific provisions. 1 Pa.C.S.A. § 1933. *See Commonwealth v. Smith,* 375 Pa.Super. 419, 433, 544 A.2d 991, 997–98 (1988) (*en banc*) (when two statutes irreconcilably conflict, specific statute governs general statute unless general statute was enacted after specific statute and general statute clearly indicates its priority). The general provisions of 75 Pa.C.S.A. § 6308(b), which were enacted prior to the 1987 amendments to the seat belt laws, permit a police officer to stop a motor vehicle whenever that officer possesses articulable and reasonable grounds to believe that a provision of the Motor Vehicle Code is being violated. But, none of the specific provisions of the seat belt laws permit a police officer to stop a motor vehicle solely because one of its occupants over the age of four is not wearing a seat belt, even though a police officer is expressly authorized to stop motor vehicles containing children under the age of four who are not properly restrained. *See* 75 Pa.C.S.A. §§ 4581–4586. Thus, because the failure of a motor vehicle driver or front seat passenger over the age of four to wear a seat belt, is not, in and of itself, a punishable violation of the Motor Vehicle Code, effect can be given to both 75 Pa.C.S.A. § 6308(b) and the seat belt laws.

In any event, the general provisions of 75 Pa.C.S.A. § 6308(b), allowing a police officer to stop a motor vehicle whenever that officer possesses articulable and reasonable grounds to believe that a provision of the Motor Vehicle Code is being violated, must yield to the specific provisions of the Motor Vehicle Code governing the use of seat belts if any irreconcilable conflict exists between them. *Commonwealth v. Smith, supra;* 1 Pa.C.S.A. § 1933. Hence, the fact that the Motor Vehicle Code fails to specifically authorize a police officer to stop motor vehicles in order to issue an oral hazard warning if their drivers and/or front-seat passengers over the age of four have failed to fasten their seat belts cannot be underemphasized. If the General Assembly wanted to also permit a police officer to stop any motor vehicle in which a seat belt violation by a driver or front-seat passenger is observed for the purpose of issuing an oral hazard warning,

then it would have specifically stated so in the Motor Vehicle Code instead of only specifically authorizing a police officer to issue an oral hazard warning (or a citation after January 1, 1985) where children under the age of four are not properly restrained by a child passenger restraint system as per 75 Pa.C.S.A. § 4584. Alternatively, a simultaneous conviction under another provision of the Motor Vehicle Code would not have been made a prerequisite to a conviction for violating 75 Pa.C.S.A. § 4581(a)(2). Therefore, the general provisions of 75 Pa.C.S.A. § 6308(b) are trumped by the specific provisions contained in the Motor Vehicle Code concerning the use of seat belts if any irreconcilable conflict between them exists.

■ Thus, in accordance with the rules of statutory construction, we hold that no violation of the Motor Vehicle Code occurs when a motor vehicle's driver or front-seat passenger over the age of four fails to fasten his or her seat belt until the driver simultaneously violates another provision of the Motor Vehicle Code because the driver or front-seat passenger over the age of eighteen cannot be convicted of and punished for failing to use a seat belt unless the driver is simultaneously convicted of violating another provision of the Motor Vehicle Code.[15] Accordingly, the fact that the occupants of a motor

15. Some guidance in reaching this interpretation of our seat belt laws is derived from a scholarly interpretation of the seat belt laws of New Jersey as that state's seat belt laws are quite similar to those of Pennsylvania. In New Jersey, enforcement of the seat belt laws pertaining to motor vehicle drivers and front-seat passengers over the age of five "shall be accomplished only as a secondary action when a driver of a passenger automobile has been detained for suspected violation of Title 39 of the Revised Statute or some other offense." N.J.Stat.Ann. § 39:3–76.2i. In interpreting this provision, one scholar has stated:

The most significant feature of the Garden State's Seat Belt Act is that one cannot be stopped solely for not wearing a seat belt. Enforcement of the law can only be accomplished as secondary to another motor vehicle violation or some other offense. In fact, the law was purposely designed as a "piggyback" offense to prevent law enforcement officers from harassing motorists.

Kropoth, M.S., *Mandatory Seat Belt Usage in New Jersey,* 9 Seton Hall Legis.J. 549, 553 (1986) (footnotes and citations omitted). Although this authority is far from binding upon this Court, we acknowledge it to demonstrate how seat belt laws similar to those of Pennsylvania have been interpreted.

vehicle over the age of four are not using their seat belts, in and of itself, can never serve as articulable and reasonable grounds to stop a motor vehicle because the Motor Vehicle Code has not been violated under such circumstances.[16]

Instantly, when the Ford LTD occupied by appellees drove past Chief Mango on West Chester Road on the evening of February 8, 1993, Chief Mango observed that the Ford LTD's driver was not using his seat belt. Consequently, Chief Mango proceeded to follow the Ford LTD on West Chester Road. At this time, Chief Mango noticed that the front-seat passenger of the Ford LTD was also not using his seat belt.

We note that the statutory provisions of other states that have held that police officers can lawfully stop motor vehicles based solely upon an officers observations of the non-use of seat belts by the motor vehicles' occupants expressly provide that the non-use of seat belts, in and of itself, is a punishable violation of the law. *See People v. Banks*, 202 A.D.2d 902, 609 N.Y.S.2d 420 (3 Dept.1994); *State v. Godfrey*, 491 N.W.2d 173 (Iowa App.1992); *State v. Apodaca*, 112 N.M. 302, 814 P.2d 1030 (App.1991), *cert. denied*, 112 N.M. 220, 813 P.2d 1018 (1991); *Rodriguez v. State*, 776 S.W.2d 715 (Tex.App.—Corpus Christi 1989). *See also State v. Cruz*, 121 Or.App. 241, 855 P.2d 191 (1993). In other words, the laws of New York, Iowa, New Mexico, Texas, and Oregon provide for primary enforcement of seat belt infractions. National Highway Traffic Safety Adm., U.S. Dep't of Transp., *Key Provisions of Safety Belt Use Laws*, 1 (May 1995). Only California, Connecticut, Hawaii, and North Carolina also have primarily enforceable seat belt laws. *Id.* In each of the thirty-nine other states that have seat belt laws, including Pennsylvania, seat belt infractions are only secondarily enforceable. *Id.* Hence, because our seat belt laws require that a seat belt infraction by a motor vehicle occupant over the age of four be brought only as a secondary action to another Motor Vehicle Code violation and in order to sustain a conviction under our seat belt laws a violator must first be convicted of another simultaneous violation of the Motor Vehicle Code, 75 Pa.C.S.A. §§ 4581(a)(2), (b), the holdings of the courts of New York, Iowa, New Mexico, Texas, and Oregon where statutory provisions mandate primary enforcement of seat belt laws cannot guide us in our interpretation of Pennsylvania's seat belt laws.

16. Previously, in *Commonwealth v. Sedgwick*, 434 Pa.Super. 448, 644 A.2d 167 (1994), a three member panel of this Court held that a motor vehicle driver's failure to use a seat belt constitutes a violation of the Motor Vehicle Code for which a police officer can stop the motor vehicle. But now, sitting as an *en banc* panel of this Court, we conclude that this is an inaccurate interpretation of the Motor Vehicle Code and we overrule *Commonwealth v. Sedgwick, supra,* to the extent that it held that a police officer could lawfully stop a motor vehicle

Chief Mango then stopped the Ford LTD solely because he had observed that two of its occupants' seat belts were unfastened. Chief Mango possessed no other reason to stop the Ford LTD. Thus, because the failure of appellees to fasten their seat belts was not, in and of itself, a violation of the Motor Vehicle Code and Chief Mango had no other independent reason to stop the Ford LTD, we hold that Chief Mango's stop of the Ford LTD was illegal and unconstitutional. Therefore, all evidence accumulated against appellees pursuant to this unlawful stop constitutes "the fruits of a poisonous tree" and must be suppressed. *See Commonwealth v. Edwards,* 355 Pa.Super. 311, 513 A.2d 445 (1986) (evidence accumulated pursuant to motor vehicle stop based solely upon police officer's unreasonable belief that Motor Vehicle Code was being violated must be suppressed as fruit of an illegal stop). *See e.g. Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Based upon the foregoing, the suppression court's order suppressing all statements and physical evidence derived from Chief Mango's February 8, 1993 motor vehicle stop of the Ford LTD occupied by appellees is affirmed.

Order affirmed.

ROWLEY, President Judge, dissented.

solely because the seat belt of its driver or front-seat passenger over the age of four was unfastened.