THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
EUGENE A. MULLINS, Appellant.

Third Department, May 26, 1988

**APPEARANCES OF COUNSEL**

*Eugene P. Grimmick* for appellant.

*James B. Canfield, District Attorney (Youel C. Smith, III,* of counsel), for respondent.

**OPINION OF THE COURT**

Levine, J.

The body of Barbara Goetke was discovered on April 20, 1982, almost three days after she was reported missing, in a remote area off Mannix Road in the Town of East Greenbush, Rensselaer County. Forensic examination revealed that the victim had received multiple chopping wounds, consistent with blows inflicted by an axe. One of the wounds was so severe as to have virtually decapitated her. Defendant was indicted for Goetke's murder some eight days later. Following a jury trial in October 1984, defendant was found guilty and now appeals from his conviction and sentence.

At the outset, we reject defendant's claim that reversal and dismissal of the indictment are required here because the delay of some 29 months between arraignment and trial deprived him of his constitutional right to a speedy trial (US Const 6th Amend; CPL 30.20). Considerations militating heavily against dismissal here on this ground are (1) that the bulk of the delay arose out of the lengthy period consumed in finally resolving the suppression issues raised by the defense, the proceedings concerning which having not been finally concluded until denial of defendant's application for leave to appeal from this court's decision modifying County Court's

order suppressing defendant's postindictment statement in its entirety (103 AD2d 994, *lv denied* 63 NY2d 709), (2) the gravity of the offense, and (3) the absence of any demonstrable prejudice to the defense as a result of the delay. As to the latter factor, defendant's claim of prejudicial surprise as to certain matters disclosed at trial would have been equally applicable had there been a prompt trial. The extent of the delay and the fact that defendant was incarcerated throughout the period are, in our view, insufficient to outweigh the foregoing factors against dismissal *(see, People v Watts,* 57 NY2d 299, 303; *People v Taranovich,* 37 NY2d 442, 445-447).

We likewise disagree with defendant's contention that the evidence was insufficient to support the conviction. According to eyewitnesses who knew defendant and/or the victim, defendant "picked up" the victim at the Nickelodeon Bar in southern Rensselaer County during the evening of April 16, 1982 and she accompanied him to two other bars in a 1971 Plymouth registered to defendant's wife. They were last seen leaving the third bar together at 3:00 or 4:00 A.M. During the course of the evening, defendant told various persons that he was going to take Goetke home and not to mention that they were together. While the police were still investigating the victim's disappearance, defendant stopped at the place of business of a person who had seen him that night, stating that he had left Goetke at the last bar and gone alone to his grandmother's house to sleep. He also instructed his friend to tell his lawyer that he was alone that night. During a search of defendant's wife's vehicle pursuant to her consent, the State Police found Goetke's house keys and a spare tire and sections of a garden hose, each of which contained bloodstains. The blood on the tire contained a factor matching the victim's blood but incompatible with defendant's blood type. Pursuant to a search warrant for defendant's residence in Schenectady County, the police seized a pair of defendant's work boots containing stains later identified as human blood. While executing the search warrant at defendant's residence, the police also took possession of an axe which had traces of human blood consistent with that of the victim's but not of defendant's. Finally, evidence was also introduced of that portion of defendant's oral, incriminating statement to the police following his arrest on the indictment, which this court previously upheld as a spontaneous admission (103 AD2d 994, 995, *supra).* In that statement, defendant confessed to being with the victim at the various bars and then driving her to the area

where the body was found and striking her with the axe from the trunk of his car in response to her aggressive sexual advances.

■ In our view, the foregoing evidence amply supports the jury's verdict. Nonetheless, reversal is required because of the invalidity of the search warrant for defendant's residence, which should have required suppression of defendant's blood-stained shoes and axe, seized pursuant to and during the execution of that warrant. Despite the changes in Federal search-and-seizure doctrine effected by the United States Supreme Court in *Illinois v Gates* (462 US 213), as a matter of State constitutional law (NY Const, art I, § 12) New York adheres to the standard of probable cause for arrests and seizures of evidence when based upon hearsay information established in *Aguilar v Texas* (378 US 108) and *Spinelli v United States* (393 US 410) *(People v Griminger,* 71 NY2d 635; *see, People v Edwards,* 69 NY2d 814, 816; *People v P. J. Video,* 68 NY2d 296, 307-309, *cert denied* — US —, 107 S Ct 1301; *People v Bigelow,* 66 NY2d 417, 424-425; *People v Johnson,* 66 NY2d 398, 406). Under *Aguilar* and *Spinelli,* a search warrant application in which the police rely upon information obtained from third parties whose affidavits are not part of the application must set forth facts and circumstances showing that (1) the informant had a basis of knowledge for the information furnished, and (2) the informant was reliable *(Aguilar v Texas, supra,* at 114; *People v Bigelow, supra,* at 423). Moreover, the validity of the search warrant is to be tested under that standard solely on the basis of the showing made upon the application before the neutral, detached, issuing Magistrate *(Spinelli v United States, supra,* at 413, n 3; *Aguilar v Texas, supra,* at 109, n 1; *People v Hanlon,* 36 NY2d 549, 559).

In the instant case, the affidavit in support of the search warrant application stated in pertinent part only that the attesting officer and other members of the State Police were investigating Goetke's homicide and that: "during the course of this investigation *it had been determined through various interviews* that [the victim] was last known to be in the accompany *[sic]* of [defendant] at approximately 2:00 A.M. April 17, 1982 * * * The investigation to date has determined that [defendant] was the last person known to be in the accompany *[sic]* of [the victim] * * * Further, it has been determined through interviews that on April 17, 1982, that [defendant] went to #2540 Consaul Road, Schenectady, New

York, arriving there at approximately noon time" (emphasis supplied).

Clearly, the foregoing averments fail to meet the *Aguilar-Spinelli* standard, since they are entirely devoid of any factual showing that the informants whose "interviews" formed the entire factual basis for the application were reliable or that they had a basis of knowledge demonstrating that the information they imparted to the police was reliable. The People argue that it is readily inferable, however, that the interviews conducted in the course of a normal crime investigation such as this were of concerned citizen witnesses, whose reliability may be presumed *(see, People v Brown,* 95 AD2d 569, 571-572). Apart from the fact that the interviewees were not identified as concerned citizens in the warrant application, this still would not satisfy the basis-of-knowledge prong of the *Aguilar-Spinelli* test. Here, as in *People v Bigelow* (66 NY2d 417, *supra),* the warrant application was insufficient because it "contained no allegations indicating that the information was based upon [the informant's] personal observation * * * and the informant's statements did not describe defendant's activities with sufficient particularity to warrant an inference of personal knowledge" *(supra,* at 424). Without such a showing, the issuing Judge had no basis upon which to make an independent determination of the reliability of the information obtained through the interviews. Rather, the Judge was relegated to accepting the officers' assessment of the reliability of the information obtained from the interviews, the very result which the *Aguilar-Spinelli* standard was designed to avoid *(see, Spinelli v United States, supra,* at 413, 419; *Aguilar v Texas, supra,* at 111, 114).

Since the search warrant was invalid, the bloodstained boots of defendant seized pursuant to it should have been suppressed. It also necessarily follows that there should likewise have been suppression of the axe, which was not an item specified in the warrant but whose admissibility the People seek to sustain as having been found "in plain view" during the course of the execution of the search warrant. However, the plain view exception to the warrant requirement cannot be applied unless, *inter alia,* the seizing officer was lawfully in a position to observe the item seized *(see, People v Basilicato,* 64 NY2d 103, 115). That requirement of the plain view doctrine cannot be met here in view of the invalidity of the warrant which formed the basis for the entry of the police upon the premises where the axe was discovered.

Despite the otherwise strong case submitted by the prosecution, the introduction into evidence of the items seized pursuant to and in the course of the execution of the constitutionally invalid search warrant, notably the bloodstained purported murder weapon, cannot be considered to have been harmless error, i.e., "that there is no reasonable possibility that the error might have contributed to defendant's conviction and that it was thus harmless beyond a reasonable doubt" *(People v Crimmins,* 36 NY2d 230, 237). Accordingly, reversal and a new trial are mandated.

The foregoing ruling renders it unnecessary to consider defendant's remaining points on appeal. We note, however, for the elucidation of the court on retrial, that error was also committed in County Court's failure fully to comply with the requirements of CPL article 730 after *sua sponte* ordering that defendant be examined to determine his competency to stand trial. Concededly, only one psychiatrist examined defendant and reported his findings to the court, rather than the two psychiatric examiners mandated under the statute (CPL 730.20 [1]). Irrespective of whether the court's determination to order the examination was triggered by a finding of possible incapacity *(see,* CPL 730.30 [1]) or whether there was any basis in the record for such a finding, once the statutory procedure was invoked, full compliance with the two-examination requirement was mandatory *(see, People v Armlin,* 37 NY2d 167, 170-172; *People v Mulholland,* 129 AD2d 857, 859).

MAHONEY, P. J., WEISS, HARVEY and MERCURE, JJ., concur.

Judgment reversed, on the law, and matter remitted to the County Court of Rensselaer County for a new trial.