THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDDIE
GUZMAN, Appellant.

Fourth Department, February 2, 1990

APPEARANCES OF COUNSEL

*Andrew Phelan* for appellant.

*Paul Carbonaro (Dennis Sedor* of counsel), for respondent.

### OPINION OF THE COURT

GREEN, J.

■ County Court should have granted defendant's motion to suppress contraband seized under the rear seat of the vehicle he was driving because the police officer's conduct exceeded permissible constitutional bounds and because defendant's conduct did nothing to arouse the officer's suspicion that he was engaged in criminal activity.

Defendant was driving, with permission, a Buffalo Airport taxi containing his cousin and a friend when he was stopped by a State Police Officer for speeding on the New York State Thruway. The officer asked defendant for his license and registration. Defendant produced his license and a taxi certificate but could not find the registration. The officer directed

defendant out of the taxi and returned with him to the police car where the officer verified that the vehicle was not stolen.

The officer then questioned defendant about matters unrelated to the speeding violation. During this conversation the officer testified that he "noticed in the (defendant's) vehicle the subject in the rear seat made some furtive movements which raised my suspicion." When asked exactly what those "furtive movements" were, the officer explained "Well, the subject reached down a couple of times towards the floor area of the vehicle." The officer asked defendant "if he was carrying any type of contraband, guns, drugs, anything of that nature" and defendant stated that he was not. The officer then asked defendant if he could "take a look" into the vehicle and defendant said "go ahead". The officer directed the passengers out of the car and frisked them and the defendant but found nothing.

The officer then searched the car. He went to the front seat and "took a look around in there" but found nothing. The officer returned to the rear seat which was "very loose." He then testified "I simply lifted it up and there in the rear seat was a brick-shaped form wrapped in paper. I picked that up, tore away the paper and I noticed a white powdery substance." The officer immediately arrested defendant and his companions for illegal drug possession but did not issue defendant a speeding ticket until three hours later at police headquarters.

There is no question that the officer had the right to stop defendant for speeding and order him and the passengers out of the car (see, Pennsylvania v Mimms, 434 US 106; People v Robinson, 74 NY2d 773, cert denied — US —, 110 S Ct 411; People v McLaurin, 70 NY2d 779, 781). The officer had no justification, however, for questioning defendant about matters unrelated to the speeding violation, or for searching the vehicle by looking underneath the seats (see, People v Class, 63 NY2d 491, 495, revd 475 US 106, on remand 67 NY2d 431). A police officer's entry into a citizen's vehicle and his inspection of personal effects therein are significant invasions of privacy and such intrusions must be justified in their inception and be reasonably related in scope and intensity to the circumstances which rendered their initiation permissible (see, People v Torres, 74 NY2d 224, 229-230; People v De Bour, 40 NY2d 210, 215). A speeding violation without more cannot sustain a search of defendant's vehicle (see, People v Adams, 32 NY2d 451, 454-455; People v Marsh, 20 NY2d 98, 101-103). Moreover,

although under certain circumstances a police officer who has validly arrested an occupant of an automobile may contemporaneously search the passenger compartment including any containers found therein, this right is limited only to situations where the police "have reason to believe that the car may contain evidence *related to the crime for which the occupant was arrested* or that a weapon may be discovered or a means of escape thwarted" *(People v Belton,* 55 NY2d 49, 55 [emphasis added], *rearg denied* 56 NY2d 646; *see also, People v Blasich,* 73 NY2d 673, 678-679).

Here, defendant adequately responded to the officer's questions, produced his license upon request, and the officer ascertained that the vehicle was not stolen. Moreover, possession of contraband or a gun is not related to speeding, the traffic offense for which defendant was stopped. Thus, the only possible justification for searching the vehicle was the officer's observation of "furtive movements" by the rear seat passenger.

■ A passenger who bends down to the floor of a vehicle is not engaged in "furtive" movements. There is nothing presumptively clandestine or sneaky about such activity and it is certainly susceptible of innocent interpretation *(see, People v Santiago,* 136 AD2d 942) particularly where, as here, the passenger was putting his shoes on when the officer returned to the car and ordered him out of it. The officer did not claim that the passenger's movements were sudden or posed an immediate threat to his safety. Rather the officer testified that his training alerts him to "different things * * * for example possible weapon, when I walk back up to the car, possibly getting shot, possibly maybe hiding something you know, I don't know. I don't know at that point what he's doing so my main goal at that point is to find out what he's doing." When the officer returned to the car he found out what the passenger was doing—simply putting on his shoes. The officer frisked the passenger and found nothing. At this point the officer clearly lacked probable cause to search the car *(see, People v Elwell,* 50 NY2d 231). The officer had no articulable or reasonable basis for conducting any further inquiry and should have issued defendant a speeding ticket and sent him on his way *(see, People v Rose,* 125 AD2d 727, 729, *lv denied* 69 NY2d 954).

■ County Court erred in finding that defendant voluntarily consented to the search. The court in its decision misstated that the police asked defendant "would he mind if I *searched*

the vehicle?" (Emphasis added.) The officer, however, testified that he asked defendant "Do you mind if I take *a look in your vehicle?*" and he said, "No, I don't mind, go ahead." The scope of a search must be limited strictly to the terms of the consent *(see, Walter v United States,* 447 US 649, 656-657; *People v Jakubowski,* 100 AD2d 112, 116-117). On this record defendant's permission to look in the car does not amount to consent to search the car by removing the rear seat.

Moreover, it is important to recall that searches conducted without a warrant and without prior approval of a detached and neutral Magistrate are per se unreasonable *(see, Coolidge v New Hampshire,* 403 US 443, 454-455). It is for this reason that the People have a heavy burden to establish voluntary consent *(see, People v Whitehurst,* 25 NY2d 389, 391) and courts should indulge every reasonable presumption against waiver *(Johnson v Zerbst,* 304 US 458). "Voluntariness is incompatible with official coercion, actual or implicit, overt or subtle" *(People v Gonzalez,* 39 NY2d 122, 128). Submission to lawful authority is not voluntary consent *(see, Bumper v North Carolina,* 391 US 543, 550). Here, defendant's consent was not voluntary. Defendant was removed from his vehicle, separated from his companions and interrogated about subjects unrelated to the speeding violation for which he was stopped. Defendant was not advised of his right to refuse to consent and although such advice is not mandatory it is a factor to consider in determining whether defendant's consent was voluntary *(see, People v Gonzalez, supra,* at 130). Under these circumstances we conclude that defendant's legal and constitutional rights were violated.

Accordingly, the judgment must be reversed and defendant's motion to suppress granted and the indictment dismissed.

PINE, J. (dissenting). We respectfully dissent and vote to affirm. The only witness at the suppression hearing was the State Police Officer who stopped defendant. The suppression court found that the officer asked defendant, "Would he mind if I took a look in the car," and that defendant responded, "No, go ahead." The court, applying the criteria of *People v Gonzalez* (39 NY2d 122), found that defendant understood the request, voluntarily and intelligently waived his right to refuse it, and consented to the search. It further found that defendant conversed with the officer and was cooperative, that the atmosphere did not appear strained, and that defendant was not in custody. The record supports those findings.

The majority finds that, on this record, consent to "look" in the car does not amount to consent to "search" it by removing the rear seat, and further finds that any consent was involuntary. No distinction between looking and searching was drawn at the hearing, however. While the officer initially testified on direct examination that he asked to look in the car, on cross-examination he was asked without objection, "After you asked Mr. Guzman if he would mind permitting you to search his vehicle, you testified that he had said that yes, that would be okay?" The officer responded, "That's right."

We find no basis in this record to reject the suppression court's finding that defendant voluntarily consented to the search of his car.

LAWTON and DAVIS, JJ., concur with GREEN, J.; BOOMER, J. P., and PINE, J., dissent and vote to affirm in an opinion by PINE, J.

Judgment reversed on the law and facts, and indictment dismissed.