THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID BRYANT, Appellant. [667 NYS2d 442] —Cardona, P. J. Appeal from a judgment of the County Court of Chemung County (Danaher, Jr., J.), rendered November 13, 1995, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the second degree.

While in Philadelphia, Pennsylvania, on April 24, 1995, Carla Ouchie, defendant and two of defendant's male friends entered Ouchie's 1995 Ford Mustang automobile in order to return to the City of Buffalo, Erie County, after an overnight trip. At approximately 8:30 P.M., Ouchie's vehicle was pulled over on State Route 17 in the Town of Horseheads, Chemung County, by State Trooper Daryl Clark. Clark was responding to a report of a vehicle matching the description of Ouchie's car

which was traveling erratically. Prior to stopping the vehicle, Clark's radar gun indicated that the car's speed was 76 miles per hour in a 55-mile-per-hour zone. When Clark approached the vehicle he noticed that the man sitting behind Ouchie, defendant, had a piece of clothing over his knees and hands and his hands appeared to be moving underneath. The man sitting next to defendant, Leroy Weston, was moving his hands down along the right side of the seat. After Clark asked them twice to show him their hands, defendant complied but Weston simply stopped moving them.

Ouchie showed Clark her temporary driver's license and told him that she did not know the identity of her three male passengers although she did say that they were financing the trip. Upon questioning by Clark, the three passengers indicated that they had no identification and did not volunteer their names. Clark asked Ouchie to step out of her vehicle and observed that her pupils were dilated and she was exhibiting behavior leading Clark to believe that she was under the influence of narcotics. Clark asked Ouchie to recite the alphabet which she did, and, upon inquiry by Clark, Ouchie told him that she had used crack cocaine earlier in the day. Clark testified at the suppression hearing that Ouchie gave him no indication that she had narcotics in her possession.

Thereafter, Clark relayed at the hearing that he and Ouchie engaged in conversation concerning the trip to Philadelphia. Ouchie told him that there was no luggage, baggage or clothing in the trunk; she handed Clark the trunk key and told him "you can check it if you want". When he opened the trunk, Clark found several items of clothing contained in plastic and paper bags, on top of which was a man's down vest with a bulging pocket. Clark testified that, in his experience, the bulge in the pocket appeared to be a concealed .25-caliber automatic pistol. Consequently, he unzipped the pocket and took out an empty blue plastic film canister that contained a white powder residue later determined to be cocaine. Clark then walked over to the male passengers in the vehicle and inquired concerning the ownership of the vest. Defendant replied that it was his. Defendant, Ouchie, and the remaining passengers in the car were ultimately all placed under arrest[1] and the car was impounded. At the police station, Ouchie signed a consent to search form for her vehicle and the police discovered three packages of cocaine, each weighing over 27 grams, hidden under the seat in the back of the car. Following a jury trial, defendant was found guilty of criminal possession of a controlled

1. Among other things, Ouchie was arrested for driving while intoxicated.

substance in the second degree and was sentenced to a prison term of three years to life. Defendant appeals.

Initially, defendant argues that County Court erred in denying, after a pretrial *Mapp* hearing, his motion to suppress the blue vial discovered in his vest pocket as the result of an illegal search and seizure. Upon review of the hearing testimony, we agree that the vial should have been suppressed. While County Court appropriately found that the initial stop of the vehicle was valid (*see, People v Durgey*, 186 AD2d 899, 900, *lvs denied* 81 NY2d 787, 788; *People v Guzman*, 153 AD2d 320, 322), we disagree with its finding that Clark had probable cause to search the vehicle at the time the vial was discovered. It is well settled that "a warrantless search of a vehicle may be authorized, not as a search incident to a lawful arrest, but as a search falling within the 'automobile exception' to the warrant requirement if the circumstances that supply probable cause for an arrest also give the police probable cause to believe that the vehicle contains contraband, a weapon or some means of escape" (*People v Mercado*, 165 AD2d 910, 912, *lv denied* 76 NY2d 988). Notably, there must be "a nexus between the probable cause to search and the crime for which the arrest is being made" (*People v Langen*, 60 NY2d 170, 181, *cert denied* 465 US 1028).

Here, even assuming that there was probable cause to arrest Ouchie for driving while intoxicated prior to the trunk being opened, with respect to the issue of illegal drug possession there is nothing in Clark's suppression testimony supporting a conclusion that he had probable cause to believe that the vehicle and the personal items of the vehicle's passengers contained contraband or a weapon. The circumstances of the stop and Ouchie's admissions would only support a "reasonable suspicion that criminal activity was afoot, which would justify the removal of the occupants from the vehicle for questioning and the frisk of the occupants, but not the further intrusion of a search [of the trunk and its contents]" (*People v Mercado*, 165 AD2d 910, 913, *supra*). The movements of the passengers prior to the discovery of the vial did not give Clark probable cause to make any drug arrests (*cf., People v Miles*, 208 AD2d 1089, 1092). While Ouchie admitted to Clark that she had used crack cocaine earlier in the day and was apparently under the influence, she made no admissions as to the possession of narcotics (*cf., People v Snyder*, 200 AD2d 901) and Clark did not ask her if he could search the car for narcotics. Clark stated that, prior to opening the trunk, he only had suspicions in his mind about the possibility of drug trafficking. In fact, Clark specifically

stated that he actually opened the trunk out of "curiosity" to verify what Ouchie had said about the absence of luggage in the trunk. It is important to note that Clark admitted that he was not searching for drugs and had no reason to believe that there was any contraband in the trunk. Moreover, the search of the vest cannot be justified as reasonably related to protecting the Troopers' safety. That is simply not the case here since all four occupants of the vehicle were either still in the car or under the observation of the Troopers that Clark had called for backup (see, People v Mercado, supra).

Notably, County Court also ruled that Clark was justified in searching the pocket of defendant's vest based upon Ouchie's unsolicited consent to look in the trunk. However, while voluntary consent can serve as a substitute for probable cause (People v Barclay, 201 AD2d 952, 953), law enforcement personnel cannot impermissibly exceed the scope of such consent (see, People v Mitchell, 211 AD2d 553, 553-554, lvs denied 86 NY2d 734, 738; People v Pena, 209 AD2d 744, 746, lv denied 85 NY2d 941). Here, it is apparent from Clark's testimony that Ouchie gave him the key to her trunk for the limited purpose of visible inspection to confirm her statement that there was no luggage or other items in the trunk. In our view, this permission could not reasonably be extended to include permission to search the pockets of any clothing located therein (see, People v Guzman, 153 AD2d 320, supra). In other words, although Ouchie's consent allowed Clark to lawfully open the trunk and he would have been justified in seizing any contraband he saw in "plain view" (cf., People v Mullins, 137 AD2d 227, 231, lv denied 72 NY2d 922), the vial in the zipped vest pocket was not plainly visible (see, People v Pena, supra, at 746). Thus, defendant's motion to suppress the vial should have been granted.

We do not consider this error to be harmless despite the introduction of other evidence sufficient to support the conviction (see, People v Mullins, supra, at 232). The People largely relied on the automobile presumption and circumstantial evidence to connect defendant to the cocaine in the passenger compartment of the vehicle (see, People v Price, 211 AD2d 943, 945, lv denied 86 NY2d 739). Defendant, who denied any knowledge of the cocaine under the seat, was examined at length concerning possession of the vial and, in fact, the vial formed the basis of a lesser included count submitted to the jury. Thus, we cannot say "that there is no reasonable possibility that the error might have contributed to defendant's conviction and that it was thus harmless beyond a reasonable doubt"

(*People v Crimmins*, 36 NY2d 230, 237). Accordingly, we conclude that the matter must be remitted for a new trial.[2]

In light of this conclusion, it is unnecessary to address defendant's remaining arguments on appeal.

Mikoll, Casey, Yesawich Jr. and Carpinello, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Chemung County for a new trial.

FOURTH DEPARTMENT, DECEMBER, 1997

(December 31, 1997)

---

2. We also find that the seizure of the three bags of cocaine was not tainted by the invalid seizure of the vial because the search of the vest was attenuated from the search of the passenger compartment by Ouchie's station house consent.