People v Andeliz (2004 NY Slip Op 24060)

People v Andeliz

2004 NY Slip Op 24060 [3 Misc 3d 384]

February 27, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Tuesday, July 13, 2004

[*1]
The People of the State of New York, Plaintiff,
v
Quenida Andeliz, Defendant.
Supreme Court, Kings County, February 27, 2004

APPEARANCES OF COUNSEL

David Chidekel, New York City, for defendant. Charles J. Hynes, District Attorney, Brooklyn (Gregory Zenon of counsel), for plaintiff.

{**3 Misc 3d at 385} OPINION OF THE COURT

Joseph Kevin McKay, J.

Introduction

An evidentiary hearing was held on February 9, 10 and 13, 2004 on defendant's motion to suppress the physical evidence taken from the car and statements made by defendant to police on the scene before arrest. This was followed by argument and submission of legal authorities by both sides. The evidentiary record consists of the testimony of Sergeant Sharkey and Police Officer Collado, both of the anticrime unit in the 77th Precinct, and defendant Quenida Andeliz,[FN1]

as well as photographic exhibits of the interior and exterior of the vehicle in question. Based on this record, I make the following findings of fact and conclusions of law.

Findings of Fact

Sergeant Sharkey was supervising two of his anticrime officers on a summons detail on the night of May 26, 2002 within the confines of the 77th Precinct. They were in uniform but in an unmarked police car. At about 10:20 p.m. that evening the sergeant noticed a vehicle proceeding [*2]west on Atlantic Avenue with heavily tinted windows on all sides but the front windshield. The driver of the police car, Officer Collado, turned onto Atlantic Avenue, followed the tinted-window car and within one or more blocks signaled to pull it over. Both cars came to a stop in front of 241 Crescent Street, just north of Atlantic Avenue.
Police Officer Collado with his flashlight approached the driver, Santiago, and once his window was rolled down smelled alcohol. Santiago had no license. Sergeant Sharkey with his flashlight {**3 Misc 3d at 386}went to the passenger side where defendant was seated. Once her window was rolled down he also smelled alcohol. A third officer of the team that night, Police Officer Perez, who did not testify at the hearing, stayed at the rear of defendant's car. Defendant produced the registration for the vehicle for Santiago to give to the police. Defendant told the police it was her car, while the unlicensed Santiago explained that he had to drive because she had too much to drink. Both were told to step out and go to the rear of their car, so that the police could assess their condition and prepare for the inspection and search contemplated by the sergeant, as explained below. The police were not in fear for their safety.
When following the car, Sergeant Sharkey had noticed the muffler of defendant's car was lower than usual. At some point during the stop he looked down and also saw the muffler was tilted or rotated to the right which, along with being lowered, signaled to the sergeant that it could have been rigged to make room for a hidden compartment or trap. He then took a closer look under the car with a flashlight and saw that a metal plate was attached, which confirmed his suspicion that there was a trap. It was Sergeant Sharkey's belief that a trap such as this was used to hide and transport drugs or guns or drug money or some combination thereof, and not for any legitimate purpose. He was completely self-taught in these mattersthrough on-the-job experienceand not through any formal law enforcement or automotive training.
Based on the foregoing he told Police Officer Collado, who was Dominican, as were defendant and Santiago, to ask them for their consent to search the vehicle. Sergeant Sharkey wanted Police Officer Collado to use their native Spanish and undoubtedly to take advantage of the enhanced rapport afforded by their common heritage. As the sergeant stood by, Police Officer Collado asked both together in English and Spanish if there were any liquor bottles in the car and, once told no, asked if the police could search the car. The occupants were not told they had a right to refuse their consent.[FN2]

Although the limitation on the scope of the search was not clearly stated by either the police or the occupants, the context in which the request was made was to search for liquor bottles.{**3 Misc 3d at 387}
Santiago responded, probably in Spanish, in words or substance "Yes" or "OK" or "No problem." Defendant testified that she never consented but her testimony was equivocal and somewhat inconsistent. She stated at times she was too drunk to understand and often claimed memory lapses. She also testified that she felt coerced by the Dominican police officer, based on her cultural experiences years ago in the Dominican Republic, and that they were promised by [*3]police that they could go home if no liquor was found in the car.[FN3]

The sergeant deliberately decided not to attempt to get their consent in writing, although police guidelines call for it, because he did not want to risk their refusal to sign the consent. I find that defendant also gave her assent and I discount her claims she was too drunk and too intimidated to do so. However, the extent to which this acquiescence under these circumstances provided the police with the right to conduct the extended search that followed and whether this evidence was clear and convincing enough to carry the prosecution's "heavy burden" of establishing consent to the type of the search that followed are matters to be analyzed below. (People v Whitehurst, 25 NY2d 389 [1969].)
After these brief conversations the sergeant went directly into the car to inspect the center console closely for signs it was rigged to accommodate a trap. He removed the ashtray connected to the rear part of the console and peered down through a tiny hole, which enabled him to see part of a white package in the hidden compartment. Based on his experience and training in narcotics, he reasonably believed that package to contain cocaine.
The sergeant then exited the car and gave his team the signal that they should arrest both occupants. They were cuffed, put in the team's car and removed to the 77th Precinct, while Sergeant Sharkey directed Police Officer Perez to take the defendant's car to the precinct also. Once there the sergeant manually removed part of the console, which had been refabricated to accommodate the trap.[FN4]

He then removed the package of white powder, which was subsequently vouchered and analyzed at the police laboratory and found to contain in excess of {**3 Misc 3d at 388}three ounces of cocaine. This indictment, charging criminal possession of a controlled substance in the second and seventh degrees, was later filed jointly against defendant and Santiago.
Defendant testified that the car was purchased by her sister, but registered in her name for reasons not explained. She drove the car from time to time, for example, to go to Kingsboro Community College and to pick up her children from school, but others also drove it, including Santiago. She was picked up that evening in that car by Santiago and they went to a nearby Dominican restaurant for a Mother's Day dinner party, during which all the adults consumed alcoholic drinks. She disclaimed any knowledge of the trap or the drugs. I have already discussed and made findings concerning her part in the "consent" conversations. I need not make findings on these other issues in order to decide this motion and I decline to do so.

Conclusions of Law

Notwithstanding discrepancies I consider minor in the testimony of Sergeant Sharkey and Police Officer Collado regarding their observing and following defendant's car, I accept as true that they saw excessive tint on the side and back windows of that car, in violation [*4]of Vehicle and Traffic Law § 375 (12-a) (b). Based on all of the evidence, including the defendant's photographs of the car, I find it was sufficiently obvious to the police that the five windows in question excluded far more than 30% of the light, as allowed by Vehicle and Traffic Law § 375, even though no tint meter was used and these officers were not expert in the fine points of the statute or its enforcement. This violation was enough to justify the stop of the vehicle. (People v Robinson, 97 NY2d 341 [2001], habeas corpus denied 2003 WL 22493499, 2003 US Dist LEXIS 18252 [SD NY, Nov. 4, 2003]; People v Ingle, 36 NY2d 413 [1975]; People v Edwards, 222 AD2d 603 [2d Dept 1995], lv denied 88 NY2d 984 [1996]; People v McGriff, 219 AD2d 829 [4th Dept 1995]; People v Cuevas, 203 AD2d 88 [1st Dept 1994], lv denied 83 NY2d 909 [1994].)
The statement defendant made to police after the stop and before arrest that it was her car is voluntary and admissible. The other statement attributed to defendant as having been made to Police Officer Perez (who did not testify at the hearing) in the District Attorney's notice under CPL 710.30 (1) (a), that Santiago was driving because she was too drunk, was not testified{**3 Misc 3d at 389} to at the hearing by the police witnesses.[FN5]

Therefore, since the court cannot make sufficient findings about the circumstances of her making this statementthe two testifying officers attributed that statement only to Santiagothe statement is not admissible at trial.
The outward inspection of the vehicle visuallywith the aid of flashlightswas certainly appropriate and not intrusive. (See, People v Williams, 205 AD2d 717 [2d Dept 1994].) The removal of the occupants, although not done for the officers' safety, was also reasonable because there was an unlicensed operator and an odor of alcoholic beverages. (See, People v Mundo, 99 NY2d 55, 58 [2002]; People v Robinson, 74 NY2d 773 [1989], cert denied 493 US 966 [1989].)
The most critical issue in this hearing is the warrantless search of the vehicle in the manner conducted by the sergeant and whether the consent elicited from the defendant and Santiagothe primary basis for the search urged by the prosecutionjustified this search. I conclude that the sergeant, having observed what he reasonably believed was a hidden compartment attached to the vehicle, possessed at least a founded suspicion of criminal activity as required by case law, when the police asked for consent to search. (People v Battaglia, 86 NY2d 755 [1995]; People v Hollman, 79 NY2d 181 [1992]; People v De Bour, 40 NY2d 210 [1976].)
Nevertheless, when consent is the justification for a warrantless search, the People bear a heavy burden of proving the consent was voluntarily obtained by clear and convincing evidence. (People v Whitehurst, supra.) "Voluntariness is incompatible with official coercion, actual or implicit, overt or subtle . . . No one circumstance is determinative of the voluntariness of consent. Whether consent has been voluntarily given or is only a yielding to overbearing official pressure must be determined from the circumstances." (People v Gonzalez, 39 NY2d 122, 128 [1976] [citations omitted].)
[*5] While I have rejected as a factual matter that the police made a false promise to defendant and Santiago that they could go home if no liquor was found, I have determined on this record that there was a nexus conveyed to defendant and Santiago between the search and possible liquor in the car. In other words, {**3 Misc 3d at 390}the consent elicited and given was reasonably understood to involve primarily a search of the vehicle for alcoholic beverages, and as such, limits the scope of the consensual search. (People v Guzman, 153 AD2d 320, 324 [4th Dept 1990].) Of course, any contraband found in the course of such a search could be lawfully seized. Obviously, taking the ashtray out of the console and peering closely into a tiny hole below is not a step that would be taken to look for containers of alcoholic beverages.[FN6]

This "heavy burden" is meant to guide the conduct of the police, the decisions of the prosecution, and in turn the decisions of the court. Having a conversation about drinking and liquor in the car immediately preceding the request to search the car, combined with a lack of clear evidence that a broader consentin writing or otherwisewas secured, does not satisfy that burden.[FN7]

On this record I conclude that defendant and Santiago gave their assent for the police to enter the vehicle and search for containers of liquor or other alcoholic beverages, as measured by an objective reasonableness standard. "[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect? . . . The scope of a search is generally defined by its expressed object." (Florida v Jimeno, 500 US 248, 251 [1991] [citations omitted], as quoted in People v Mitchell, 211 AD2d 553, 554 [1st Dept 1995], lv denied 86 NY2d 738 [1995].)
This conclusion is based on Officer Collado's testimony, partially supported by the testimony of Sergeant Sharkey and defendant. It was the main focus of the conversation among all those involved in the stop that night. Put another way, the People have failed to carry their heavy burden to establish clearly and convincingly that the consent was not only voluntary but unlimited in scope. For example, without a writing, we do {**3 Misc 3d at 391}not know the precise words used, which courts have found to be significant in determining the nature and intensity of the consensual search. (See, People v Mirenda, 57 NY2d 261 [1982]; People v Bryant, 245 AD2d 1010 [3d Dept 1997]; People v Guzman, 153 AD2d 320, 323-[*6]324 [4th Dept 1990]; compare People v Brito, 244 AD2d 631 [3d Dept 1997],
lv denied 91 NY2d 924 [1998]; People v Forte, 234 AD2d 891 [4th Dept 1996], lv denied 90 NY2d 939 [1997]; People v Abrams, 95 AD2d 155, 158-159 [2d Dept 1983].) An objectively reasonable person placed in the circumstances of defendant and Santiago would not have understood the police request and subsequent actions to have involved disassembling parts of the car. (See, People v Calvo, 1 AD3d 605 [2d Dept 2003]; People v Mitchell, supra; see also, United States v Restrepo, 890 F Supp 180, 196-197 [ED NY 1995].) Under all of these circumstances, I conclude the sergeant's search was not justified as consensual.
The prosecution's "fall-back" position is that even without consent the search was justified under the automobile exception to the warrant requirement. (People v Collado, 304 AD2d 836 [2d Dept 2003].) This argument must also fail because, unlike Collado, the police here did not possess probable cause to believe that drugs or a weapon was present in the vehicle. Granted, the sergeant's observations regarding the presence of a trap in the vehicle gave rise to a high degree of suspicion of criminality. Something more is needed, however, to establish that the trap was then being used to conceal contraband in order to invoke the automobile exception.[FN8]

This exception was fashioned to allow the police to respond to potentially dangerous situations in the context of the mobility of a motor vehicle (People v Major, 267 AD2d 251 [2d Dept 1999], lv denied 94 NY2d 904 [2000])[FN9]

or to search the vehicle when they have probable cause to believe contraband is inside which is related to the nature and scope of an authorized arrest already being effected. (People v Ellis, 62 NY2d 393 [1984]; People v Langen, 60 NY2d 170 [1983]; People v Belton, 55 NY2d 49 [1982]; People v Savona, 112 AD2d 328 {**3 Misc 3d at 392}[2d Dept 1985]; People v Rives, 237 AD2d 312 [2d Dept 1997]; see also, People v Galak, 81 NY2d 463 [1993]; People v Blasich, 73 NY2d 673 [1989].)
Finally, the People have also argued "inevitable discovery," but this exception has never been available for "primary evidence" such as the narcotics seized in this case. (People v Turriago, 90 NY2d 77 [1997]; People v Stith, 69 NY2d 313 [1987].)
For all the above-stated reasons, defendant's motion to suppress the physical evidence is hereby granted. Since the suppressed narcotics constitute the sole basis for both counts of the indictment and without it the People have no triable case, the indictment is hereby dismissed.

Footnotes

Footnote 1: A codefendant, Samuel Santiago, described as her boyfriend, was indicted with Andeliz. The criminal action against Santiago has since been abated upon his death in December 2002.

Footnote 2: Such advice is not mandatory, but is one factor to be considered in determining the voluntariness of consent. (People v Gonzalez, 39 NY2d 122, 130 [1976]; People v Guzman, 153 AD2d 320, 324 [4th Dept 1990]; Schneckloth v Bustamonte, 412 US 218, 227 [1973].)

Footnote 3: That last allegation has a plausible ring to it in this context, but it was denied by both police witnesses and defendant's testimony was simply too inconsistent and equivocal for me to credit that specific allegation.

Footnote 4: The console was hooked up electrically to a piston and designed to open by the use of special circuitry which the sergeant did not know how to operate.

Footnote 5: Defendant denied remembering that she made such a statement at one point in her hearing testimony, but later admitted making the statement. Even in that context, however, no one elicited details from her about the circumstances under which she made that statement.

Footnote 6: That the police intentionally or otherwise misled the occupants by coupling the request to search with an expressed concern for liquor in the carand by not questioning the occupants about drugs or a hidden compartmentdoes not by itself vitiate consent. Ruses and deception by police are permitted in other contexts. (See, e.g., People v Tarsia, 50 NY2d 1 [1980]; People v Roe, 136 AD2d 140 [3d Dept 1988], affd 73 NY2d 1004 [1989]; People v Esposito, 191 AD2d 746 [3d Dept 1993], lv denied 81 NY2d 885 [1993].) Such police action, however, can limit the consent and the scope and intensity of an authorized search.

Footnote 7: In contrast in a nonconsent search and seizure case the People only have to come forward initially to show the lawfulness of the police conduct and then the defense must prove unlawfulness by a preponderance of the evidence. (See, People v Berrios, 28 NY2d 361 [1971].)

Footnote 8: See and compare People v Concepcion (172 Misc 2d 134 [Sup Ct, Bronx County, 1997]) for a more elaborate discussion of a trap and its role in enhancing the basis for an arrest and search of a motor vehicle. In Concepcion, the observations and knowledge of the police about the occupants' drug-related activity and about the trap itself was significantly greater than in Andeliz.

Footnote 9: There was no fear for safety expressed by either officer. (Compare People v Carvey, 89 NY2d 707 [1997]; People v Cisnero, 226 AD2d 279 [1st Dept 1996], lv denied 88 NY2d 1020 [1996]; People v Osborne, 158 AD2d 740 [3d Dept 1990], lv denied 75 NY2d 968 [1990].)